

**FILED**
3/10/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MEN

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARISSA A. GIRARD, | Civil Action No. 1:25-cv-00136 |
| Plaintiff, | |
| v. | District Judge Andrea R. Wood |
| JUDGE ROSSANA P. FERNANDEZ, | Magistrate Maria Valdez |
| JUDGE REGINA A. SCANNICCHIO, | |
| JUDGE GREGORY E. AHERN, | |
| JUDGE WILLIAM YU, | First Amended Complaint and Jury Demand |
| ELENA S. DEMOS JD, | |
| VINCENT D. WALLER JD, | |
| ADAM P. MONREAL ESQ, | |
| EBONY CHEERS, | |
| JANE F. GIRARD, | |
| ENRICO J. MIRABELLI ESQ, and | |
| MATTHEW D. ELSTER ESQ, | |
| Defendants. | |

Plaintiffs Marissa Girard, in pro se, for her First Amended Complaint against Defendants

**hereby requests a trial by jury** pursuant to FRCP 38(b) and alleges as follows:

**BACKGROUND STATEMENT**

1.       On or around Fall 2022, Jane F. Girard – a proven sex abuser of her children –

commenced an inexplicable quest to strip custody of her twin biological daughters from their

father Kenton Girard under Cook County Case No. 2015D9633 ("Custody Proceedings").

Plaintiff's only connection to that matter devolves from the fact that she is Kenton Girard's wife.

2.       Customarily, such proceedings do not implead successive spouses or non-parents

as parties, however here Jane F. Girard and her attorneys at Beermann LLP vexatiously named

Plaintiff as a third party respondent under the Custody Proceedings in order to gain leverage over Kenton Girard by illicitly imposing stress, trauma, anxiety, distress, inconvenience and significant cost and expense on Plaintiff.

3. The vexatious naming of Plaintiff as a third party respondent under the Custody Proceedings was masterminded by Jane F. Girard and constitutes a grave concern given Plaintiff's extremely serious mental and physical disabilities at play. To wit, Plaintiff suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home in part due to the constant need to urinate, particularly when exacerbated by stress or when the condition expresses in the format of intense and incapacitating vaginal pain. She also suffers from PTSD, which is aggravated by environmental stress and anxiety and in turn worsens her physical symptoms under interstitial cystitis.

4. Jane F. Girard and her attorneys at Beermann LLP have launched an all-out offensive on Plaintiff using the court system, involving excessive and sham motions and papers. The abuse of the judicial proceeding to harass Plaintiff has included *inter alia* seeking judicial sanctions and jail time against Plaintiff for her apparent failure to enforce a gag order on Kenton Girard's daughters, making a mockery of her medically documented disabilities which require accommodation under the Americans with Disabilities Act of 1990 ("ADA"), playing cat-and-mouse over the scheduling and the format of her in-person deposition – devoid of any intended probative value for crafting a custody order as to Kenton and Jane's children, the making of off-channel threats against her well-being and her livelihood, and most recently goading Hons. Rossana P. Fernandez and Gregory E. Ahern to trample her rights.

5. Jane F. Girard's attorneys at Beermann LLP apparently have a very friendly audience in the family courts of Cook County, wherein Plaintiff has been the victim of a

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

frivolous, abusive and vexatious circus of legal proceedings presided by a revolving door of eight different judicial officers, most recently Hons. Rossana P. Fernandez[1] and Gregory Ahern. Meanwhile, the Presiding Judge of the Domestic Relations Division Regina A. Scannicchio – ostensibly occupying a supervisory posture as to all family court proceedings in Cook County and the only judicial officer who has continuously overseen the Custody Proceedings from the beginning – has turned a blind eye to the corrupted and unconscionably improper proceedings.

6.     There is notably pending litigation[2] in this District ("Bribery Lawsuit") which explores accusations of bribery against various judicial officers – including Defendant Scannicchio, who is described as "owned by Beermann LLP" – connected with the Custody Proceedings. That Bribery Lawsuit also seeks relief *inter alia* from civil RICO violations by Jane F. Girard's counsel Enrico Mirabelli and his law firm Beermann LLP.

7.     The reprobate cast of characters responsible for Plaintiff's mistreatment under the Custody Proceedings also includes a Cook County lifer who has previously been the target of criminal investigation, namely Hon. Scannicchios's Chief Deputy Clerk Adam P. Monreal Esq., who has administrative duties over the entire Domestic Relations Division of Cook County.

8.     Mr. Monreal was forced to resign from the Illinois Prisoner Review Board in 2016 after former Governor Bruce Rauner discovered that he had under-reported his state salary in a bankruptcy proceeding which was closed in August 2011. At that time, Monreal was chairman of the state parole board, appointed to that position by former Governor Pat Quinn in 2010.

9.     Defendant Monreal has passively watched from the sidelines – refusing to answer innumerable email messages and telephone calls – as Plaintiff's rights have been eviscerated.

---

[1] Judge Rossana P. Fernandez has recused herself pending the adjudication of a Substitution of Judge for Cause, brought against her by Kenton Girard under the authority of 735 ILCS 5/2-1001(a)(3). Two previous Hons., William S. Boyd and Renee G. Goldfarb, resigned under suspicion of extrajudicial wrongdoing including bribery.
[2] See *Kenton Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois. The operative pleading is filed under Dkt[73] in that proceeding.

Hon. Scannicchio also relies on a number of wildly compromised judicial officers in Domestic Relations when a case is moved to Calendar 01 pursuant to a petition for substitution of judge, following an order of recusation or other circumstances wherein there is a prospect of having to change the judicial officer.

10.     One of these compromised judges is Defendant Gregory E. Ahern Jr, who has recently presided over the Custody Proceedings. Despite his Cook County salary of $260,000 resides in a palatial six-bed six-bath 6,000 square foot home in the most expensive zip code in Illinois at 465 Sunset Road in Winnetka. That residence is currently worth ~$3.5 million (per Zillow) and incurs an annual property tax bill of ~$45,000.

11.     Prior to living in Winnetka, Hon. Ahern resided at 1815 N. Honore Street in Chicago, which residence he purchased for $440,000 in 2002. Once he was appointed by the Supreme Court of Illinois to fill a vacancy as an Associate Judge on January 3 2013, Hon. Ahern's financial picture dramatically improved wherein upon information and belief he cut a backroom deal with Beermann LLP. The deal was consummated in a meeting with attorney John M. D'Arco during an in-person meeting at the LaGrange Country Club located at 620 S Brainard Ave, La Grange, IL 60525 during the summer of 2014. Under the deal, Judge Ahern agreed to accept a regular flow of cash bribes to render favorable decisions for the clients of Beermann LLP in the proceedings he presided over. Upon information and belief, he makes in excess of $25,000 per month in undeclared bribery income[3] from Beermann LLP.

12.     On September 15 2017, Hon. Ahern closed on his purchase of 465 Sunset Road in Winnetka (PIN # 05-21-409-010-0000) with the deed[4] being recorded five days later and

---

[3] Upon information and belief, Hon. Ahern is moreover a "gateway judge" – like Judge William S. Boyd – who is trusted to direct funds to bribe other Hons. within the Domestic Relations Division. See the amended pleading at Dkt[73] at ¶¶ 37, 38, 40, 89 under the Bribery Lawsuit.
[4] The ownership interest in the home is shared equally by the Gregory E. Ahern Jr. Trust Dated March 23 2011 and the Lisa Nolan Ahern Trust Dated March 23 2011.

reflecting a purchase price of $2,165,000. To finance that purchase, Hon. Ahern got a loan for $1,515,418 with an interest rate of approximately 3.9% and he tendered $650,000 in cash to close[5]. Monthly principal and interest alone are ~ $7,200 per month. Homeowner's insurance for a replacement value of $2,165,000 would likely be ~$12,000 per year based on data from State Farm. Adding in the annual tax bill of ~$45,000 brings the monthly obligation to ~ $12,000.

13.     Utilities (water, gas, electricity, trash, internet) probably imply about $1,200 of additional monthly costs. Upkeep and maintenance is usually estimated at $6.00 per square foot per year. In this case another $36,000 per year. Therefore the monthly payment obligations on the home elevate to ~$16,000. Add in the looming college expenses for Ahern's children and the staggering monthly costs cast a long shadow over Ahern's $260,000 salary from Cook County.

14.     Recently, Hon. Ahern was taken off the bench by the Supreme Court of Illinois, **for exhibiting unacceptable racist bias** in postings on social media. On September 12 2023, the Executive Committee of Cook County vacated a previous order restricting Judge Gregory E. Ahern Jr.'s duties to the office of the Presiding Judge of the First Municipal District under Special Order 2023-121, dated August 25, 2023.

15.     The original order was issued after it was reported on August 15 2023 that Judge Ahern had used social media to express support for comments that could reasonably be interpreted as suggesting bias or prejudice based on race, gender, gender identity, or sexual orientation. Such expressions were seen to potentially undermine his judicial independence, integrity, or impartiality.

16.     It is deeply ironic that Judge Ahern – **the only judicial officer in the current Domestic Relations roster to have been suspended for misconduct out of several dozen**

---

[5] Upon information and belief, Hon. Ahern saved significantly from his undeclared bribery income from Beermann LLP during 2013-2017, which allowed him to save up $650,000 for the down payment on his Winnetka mansion. Notably, he did not have any proceeds from the sale of his previous residence at 1815 N. Honore Street in Chicago because that property did not sell until approximately one year after he purchased the Winnetka mansion.

**judicial officers** – has been hand-picked by Hon. Scannicchio to preside over the Custody Proceedings in the wake of Hon. Fernandez's recusal for exhibiting unacceptable bias and inexplicable antagonism against court watchers and Plaintiff.

17.     However, the Judicial Inquiry Board informed the court on September 11 2023 that it had concluded its investigation into the allegations against Judge Ahern. The Board reported that no further action was warranted and the matters were now closed.

18.     As a result, the Executive Committee issued Special Order 2023-126 on September 12 2023. This order vacated the previous restrictions and reassigned Judge Ahern to the Domestic Relations Division, effectively returning him to his regular judicial duties.

19.     Upon information and belief, attorney John M. D'Arco from Beermann LLP was instrumental in obtaining the reprieve from the Supreme Court of Illinois for Judge Ahern, wherein he relied on his federal felon father's deep relationship with federal felon Ed Burke[6] to obtain the favor from the Supreme Court of Illinois. Indeed, Ed Burke's wife Anne M. Burke served as a justice of the Supreme Court of Illinois until she resigned from that position on November 30 2022. Ironically after the latest intervention by John M. D'Arco, Hon. Ahern is now even more beholden to Beermann LLP and Plaintiff is hostage to these fixed proceedings.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal law. This Court also has jurisdiction under 28 U.S.C. §1343(a)(3) to redress deprivations "under color of any state law, statute,

---

[6] As is explored in much more detail in the Bribery Lawsuit, pending before District Judge Pallmeyer, John M. D'Arco's father John A. D'Arco Jr (also a former member of the Illinois Bar) represented the interests of the Chicago Outfit in his position as state senator wherein he exercised significant influence over state matters until he was convicted under consecutive indictments for bribery in the Northern District of Illinois and in addition to being remanded to prison was ordered to never again work in the employ of any state in our country in any capacity whatsoever. It is well known, furthermore, that beyond his wife being a Supreme Court justice in our state, Ed Burke's corrupt hand was deeply involved in the emplacement for appointment of many Hons. in Cook County over the years in what can only be described as a long history of extremely transparent and ostentatious pay-to-play schemes. In true Chicago tradition, Ed Burke capped his long political career with a criminal conviction in this district for *inter alia* racketeering and extortion.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States."

21.     The Court has authority to grant injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's inherent equitable powers.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants work and reside in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

23.     Venue is further proper in this district as to those claims which do not specifically raise federal and constitutional questions under 28 U.S.C. §1367(a).

24.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

25.     **Plaintiff Marissa A. Girard** is a longtime resident of Glencoe  and the wife of Kenton Girard, whose ex-wife Jane F. Girard initiated the Custody Proceeding.

26.     **Defendant Rossana P. Fernandez** is a circuit judge in the Domestic Relations Division who has recently presided over the Custody Proceeding. She is being sued in her personal capacity.

27.     **Defendant Regina A. Scannicchio** is the presiding judge over the Domestic Relations Division of Cook County. She is being sued in her personal capacity.

28.     **Defendant Gregory E. Ahern** is an associate judge in the Domestic Relations Division who has recently presided over the Custody Proceedings. He is being sued in his personal capacity.

29.     **Defendant William Yu** is an associate judge in the Domestic Relations Division who took over the Custody Proceedings after Hon. Fernandez recused herself from the proceedings. He is being sued in his personal capacity.

30.     **Defendant Elena S. Demos JD** is the Cook County Court ADA coordinator, wherein she reports to the Office of the Chief Judge Timothy Evans. She is being sued in her personal capacity.

31.     **Defendant Vincent D. Waller JD** is an HR coordinator for the Cook County Court. He is being sued in his personal capacity.

32.     **Defendant Adam P. Monreal Esq** is the Deputy Chief Clerk for Presiding Hon. Scannicchio. He is being sued in his personal capacity.

33.     **Defendant Ebony Cheers** is the courtroom coordinator for Hon. Fernandez and is being sued in personal capacity.

34.     **Defendant Jane F. Girard** is the ex-wife of Kenton Girard, in other words the opposing party in the Custody Proceedings.

35.     **Defendant Enrico J. Mirabelli** is an attorney at Beermann LLP who is one of a few attorneys actively involved on behalf of Jane F. Girard under the Custody Proceedings. He is being sued in his personal capacity.

36.     **Defendant Matthew D. Elster** is an attorney at Beermann LLP who is one of a few attorneys actively involved on behalf of Jane F. Girard under the Custody Proceedings. He is being sued in his personal capacity.

<u>The bench in Domestic Relations is full of compromised judicial officers.</u>

37.    The stench is not limited to Hons. Fernandez, Scannicchio, Ahern, Yu and Johnson.  An instructive example is Associate Judge Myron F. Mackoff, the son of retired Cook County Circuit Judge Benjamin Mackoff and who was appointed to the bench after having previously lost in a primary election. He was facing financial ruin in 2013-2014 wherein the landlord filed an eviction proceeding against his law firm and he was sued for foreclosure, which lawsuit he litigated for three years. Then Myron relied on his father's political clout to get appointed to the bench, with the aim of getting his hands on the accompanying $260,000 salary which would shore up his disastrous personal finances. Myron – like many others – was appointed to the bench after filling a temporary vacancy and then losing in the primary election.

38.    Associate Judge Lori Rosen was a longtime Cook County prosecutor and upon information and belief a long-time romantic interest of Judge Gregory Ahern, during the period of time in which he has been married to his wife Lisa Nolan Ahern. Upon information and belief, Judge Ahern used his political clout to get Ms. Rosen appointed to the bench in 2018 – a few years after his own appointment.

39.    Judge David E. Haracz is an associate judge of the Domestic Relations Division of the Circuit Court of Cook County. He was elected to the bench in 2005 and re-appointed in 2011, 2015, and 2019. His tenure is beset with allegations that he has a long record of wreaking tremendous destruction and damage on families and children due to his relentless illegal orders that transfer family funds to his acquaintances and prolong cases so as to enrich court appointed child representatives and attorneys.

40.    Judge Michael Forti is known for incarcerating Steve Fanady in his divorce from Pamela Harnack *for going on three years*. In that matter, Beermann LLP attorney John M. D'Arco's former law firm Lake Toback represents Ms. Harnack.

41.     As recently as 2011, the Chicago Tribune reported the surest way to land an appointment to the bench in Cook County was to be recommended to former alderman Ed Burke by Michael Madigan (Speaker of the Illinois House from 1983 to 2021, with the exception of 1995–1997 when Republicans took control of the Illinois House). Ed Burke headed the Cook County Democratic committee tasked with picking judicial candidates for decades. And the Chicago Tribune further noted that one of the surest ways to receive a nod from Madigan was to donate to the campaign of his daughter, former Illinois Attorney General Lisa Madigan.

42.     From 2012-2018, campaign finance records show that Michael Forti, who had gone on to work as chief counsel for the Illinois Department of Transportation, donated thousands to campaign funds run by Ed Burke and other powerful Chicago Democrats.

43.     Other Domestic Relations judges recommended by Michael Madigan to Ed Burke include Judge James A. Shapiro, Judge Matthew Link, Judge Edward Arce and Presiding Judge Regina Scannicchio. All of these Hons. were delivered to their positions courtesy of Ed Burke and are moreover completely compromised.

44.     Judge Michael Forti is not the only Domestic Relations judge to have come under scrutiny implementing debtor's prisons under findings of indirect civil contempt of court, for failing to pay often millions of dollars of "domestic support obligations," typically consisting largely of attorney fees racked up by the other spouse.

45.     In nearly all instances, the incarcerations in Cook County Jail have come despite repeated assertions by the men that they do not have the money the courts believe they have, and despite pleas from the men that the jailing jeopardizes their ability to earn money to pay the support the court has ordered them to pay.

46.     One such example is Judge Abbey Romanek, who famously sent River Forest real estate developer Frank "Marty" Paris to debtor's prison on three separate occasions during the divorce proceedings with his wife. Journalists from near and far decried Judge Romanek's embarrassing inability to achieve even a basic understanding of the balance sheet of a corporation and confusing its assets for the disposable income of Mr. Paris.

47.     In *IRMO Roseanne Tellez and David A. Cerda*, 2024 IL App (1st) 241866, the Illinois Appellate Court ruled on December 20 2024 that Hon. Scannicchio abused her discretion by jailing David A. Cerda for civil contempt with a cash bail set at $248,648.73. In that matter, Hon. Scannicchio – who is, *frighteningly*, the current presiding judge of the Domestic Relations Division of Cook County – recklessly disregarded the requirement to assure that a civil contemnor has the ability to pay the purge remedy. Mr. Cerda nonetheless was illegally jailed for three months all the same.

48.     On May 24 2024, Dr Kimberly Lopez was facing jail for indirect civil contempt in the courtroom of Judge Bernadette Barrett in her family law case 2011D579053 in the Fifth Municipal District in Bridgeview. Similar to the rebuke against Judge Regina Scannicchio, the Illinois Appellate Court overruled Judge Bernadette Barrett.

49.     Given the enormous critical mass of corrupted judicial officers in Domestic Relations, it is wholly unsurprising that the courts and their agents are also routinely weaponized against whistleblowers. In 2021, deceased attorney Edwin "Ted" Bush III famously came under disciplinary proceedings from the ARDC amid his encounter with Cook County's family courts, accusing Hons. and guardians ad litem of misconduct over their handling of the dispute between him and his ex-wife over custody of their three children.

50.     In his responsive pleadings under *In the Matter of Edwin Franklin Bush III*, Commission No. 2021PR00059, ARDC Case No. 6322150, filed on August 27 2021 at p. 14, Mr. Bush notably compared the conduct of the judges, lawyers and GALs involved in divorce proceedings to child trafficking: "Domestic relations courts and their surrounding cottage industries are predatory and resemble organized crime—seizing children from fit parents and then selling them back with unnecessary and unwanted 'services,'" Bush wrote. "That is none other than child trafficking."

51.     Unfortunately, pancreatic cancer took the life of Mr. Bush in his mid-40s and he did not get the opportunity to vindicate his good name which was tarnished by the corrupt instrumentality of the ARDC as puppeteered by the family law community of Cook County. However, his efforts to expose the systemic corruption in the Domestic Relations Division have scored a profound impact on the court reform community in Cook County and beyond, including under the landmark ruling under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

52.     Domestic Relations Judge Ellen L. Flannigan is a piece of work. In a  family law proceeding *IRMO Szymulanski*, Cook County Case No. 2021D008999, Judge Flannigan allowed Beermann LLP to propound a dozen separate excessive and abusive motions for fees totalling in excess of $600,000 and allowed Beermann LLP to gin up criminal charges against Mr. Szymulanski to see him arrested and the charges subsequently dropped for lack of evidence.

53.     The Robing Room reviews of Cook County Domestic Relations Judge Ellen L. Flannigan are very typical for the Domestic Relations Hons.. Those reviews complain that "[her] prejudices are so obvious it only emboldens the side she favors to ask for more and be less likely to compromise. She cares not about equal protection, precedent or due process. When she takes a

side she advocates for that side… [harbors] bias against fathers, minorities … calls good people 'gangbangers', indiscriminately drug tests minorities, and breaks families up."

54. It is therefore no surprise that the Cook County court system routinely ranks low among the various venues across our land. Domestic Relations is reputed as a judicial hellhole.

The Custody Proceedings have exacted a heavy toll on Plaintiff.

55. The unreasonably lengthy nature of the Custody Proceedings – now going on three years – has caused an outrageous imposition on Plaintiff's life and work. Plaintiff has had to turn away numerous clientele from her therapy and consulting practice, due to being overwhelmed by time commitments to attend to the Custody Proceedings and to attend to her aggravated physical conditions owing to the stress caused thereby, wherein Plaintiff has already been suffering from interstitial cystitis and PTSD (both of which are qualifying disabilities under the ADA) and those conditions have become more acute and debilitating as Jane F. Girard and her attorneys refuse to relent from their sanctionable and illegal onslaught of court filings.

56. Most recently, on October 16 2024 Plaintiff exercised her statutory right to call for removal of the presiding judicial officer du jour, namely Hon. Fernandez. She duly and properly filed her motion, at which point under the plain language of 735 ILCS 5/2-1001(a)(2) Hon. Fernandez was by operation of the statute removed from the Custody Proceedings.

57. In open court at a court date in the Custody Proceedings on October 18 2024, attending to the first order of business, **Hon. Fernandez granted Plaintiff's petition**. However, with the goading of Jane F. Girard via her attorneys, Hon. Fernandez subsequently defiantly changed her ruling from "granted" to "stricken" and proceeded to issue numerous orders and directives under a full-blown Case Management Conference on October 18 2024. Doubling down, she issued further orders during a court date on December 6 2024, before recusing herself

from the proceedings on December 9 2024.

58.     By commanding the bench when Hon. Fernandez had been operatively removed – **indeed she had divested herself of jurisdiction by pronouncement in open court** – from the Custody Proceedings, Hon. Fernandez has made herself amenable to suit.

<u>The Defendants have desecrated the First Amendment rights of Plaintiff.</u>

59.     The October 18 2024 court date was not a closed proceeding, it was attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public.

60.     Plaintiff, as named third party respondent under the Custody Proceedings, presided jointly by Defendants Fernandez and Ahern, was set to attend the October 18 2024 court date to present her petition for substitution of judge as of right directed at Hon. Fernandez.

61.     Plaintiff was to appear via Zoom, as were a number of litigants, attorneys, and other observers. However, Plaintiff was never allowed access to the courtroom proceeding from the Zoom "waiting room". Hon. Fernandez and Ahern's courtroom coordinator Ebony Cheers personally controlled the Zoom "waiting room" wherein she refused to admit Plaintiff to the proceedings at the behest of Hons. Fernandez and Ahern.

62.     When the matter was called, Hons. Fernandez and Ahern refused to allow courtroom coordinator Ebony Cheers to admit Plaintiff from the Zoom "waiting room". Plaintiff was not permitted to present her petition or to otherwise participate or observe in the court date on October 18 2024. Moreover, at no point in time did the Court indicate that the proceedings were closed to the public. Instead, Hons. Fernandez and Ahern capriciously and inexplicably decided that Plaintiff had no business in her court and refused to admit her.

63.     The Defendants failed to ensure that the Circuit Court of Cook County, Illinois was accessible to Plaintiff because *inter alia* it failed to ensure that Plaintiff was admitted to the October 18 2024 proceeding controlled by Hons. Fernandez, Ahern and Scannicchio.

64.     Plaintiff has been injured as a result of the Defendants' conduct and has sustained humiliation and emotional distress, has suffered lost earnings under her private therapy and counseling practice, has suffered the indignity of discrimination, which has manifested in emotional distress, injury to her earning capacity, disrupted her personal life, and caused the loss of enjoyment of the ordinary pleasures of life.

65.     Absent action protecting the rights of free access to courtrooms for the public, the judicial system's credibility will be unnecessarily tarnished by the actions of the Defendants. As a result of Defendants' refusal to allow Zoom access to court to Plaintiff, she has been denied court access and court services provided to non-disabled persons and faces risks and burdens not experienced by non-disabled persons, including:

a. Fear of dire health consequences, and possibly death.

b. Having to rely on advocacy for her interests *outside of the courtroom* from which she has been excluded.

c. Increased anxiety, frustration, and embarrassment, having been denied a voice in the courtroom proceedings under which she is a named third party respondent.

The protections of the ADA are relevant here.

66.     Plaintiff is a member of a protected class under 42 U.S.C. § 12101, et seq. Plaintiff is also a "qualified individual with a disability" as defined in 29 U.S.C. § 794 for application of the Rehabilitation Act of 1973. The Rehabilitation Act and its implementing regulations require that no qualified individual, solely by reason of her actual or perceived

disability, be subjected to discrimination under any program or activity receiving Federal financial assistance.

67. The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

68. In today's tech-savvy world, Zoom is a widely used, reliable, scalable and proven technology for enabling remote court attendance over the Internet. The Zoom application may be utilized on mobile devices and home computer systems and is widely supported by various operating systems and protocols. As of April 2020, Zoom video conferencing software enjoyed use by an average of three hundred million (300,000,000) conference participants per day[7].

69. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II further prohibits the unnecessary segregation of persons with disabilities. *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999).

70. The chief purpose of the ADA is to end discrimination against, and the isolation of, individuals with disabilities. As Congress stated in the findings and purpose section of the ADA: "[H]istorically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress further found that discrimination against individuals with disabilities persisted in education and access to public services, and that such individuals faced various forms of

---

[7] See market research about Zoom in which monthly usage statistics were reported.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

discrimination, including "segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §§ 12101(a)(3), (a)(5).

71.     Title II of the ADA therefore prohibits discrimination on the basis of disability by public entities as codified under 42 U.S.C. § 12132. A "public entity" is any State or local government and any department, agency, or other instrumentality of a State or local government, and covers all services, programs, and activities provided or made available by public entities, including through contractual, licensing, or other arrangements. *Id*. §§ 12131(1), 12132; 28 C.F.R. § 35.130. Accordingly, Title II's coverage extends to the State and its agencies.

72.     Congress directed the Attorney General to issue regulations implementing Title II of the ADA. *See* 42 U.S.C. § 12134. The Title II regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). "The most integrated setting" means a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible . . " Id. pt. 35, app. B at 690.

73.     Title II's regulations further prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination, including unnecessary segregation, or "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." *Id.* § 35.130(b)(3).

74.     The Supreme Court has held that Title II prohibits the unjustified segregation of individuals with disabilities in the provision of public services. *See Olmstead*, 527 U.S. at 597. Unjustified isolation of persons with disabilities who, with reasonable modifications, could participate in an integrated setting is unlawful discrimination because (1) segregation

"perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and (2) segregation "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 600-01.

75.     Title II's regulations also address discrimination in the form of inequality in services, programs, or activities.  Public entities may not (1) "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service;" (2) "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others;" (3) "[p]rovide a qualified individual with a disability with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;" or (4) "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service." *Id.* § 35.130(b)(1)(i)-(iii), (vii).

76.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. Further, Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.130(a).

77.     People who suffer from PTSD or interstitial cystitis - such as Plaintiff are qualified individuals with disabilities under the ADA as amended in 2008. Plaintiff is, and at all times relevant hereto has been, suffering from PTSD and interstitial cystitis, therefore, a member of a protected class under the ADA and the regulations implementing the ADA.

78.     Section 504 of the Rehabilitation Act of 1973 prohibits a "qualified individual with a disability," solely by reason of her or his disability, from being "denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

79.     The Cook County Court System is a recipient of federal funds. Furthermore, Zoom accommodation of Plaintiff would be in keeping with the trend of virtually all proceedings in Cook County wherein Zoom participation is allowed (and moreover encouraged).

80.     While the ADA does not require the court system to take any action that would fundamentally alter the nature of court programs, services, or activities, or that would impose an undue financial or administrative burden on the courts, Title II of the ADA does prohibit discrimination on the basis of disability in state and local government programs and services. Title II incorporates the remedies available under the analogous federal law, Section 504 of the Rehabilitation Act, which prohibits disability discrimination by federally funded programs.

81.     The Defendants have hereby discriminated against persons with disabilities under their manifest failure to comply with the ADA. Hereunder, Plaintiff was denied the ability to participate in court dates under the Custody Proceedings viz Zoom, wherein only Zoom offers a tried and tested and reliable manner of participating which does not threaten aggravation of her pre-existing mental and physical conditions which have been fully diagnosed and documented by years of treatment under the care of her physician.

82.     Plaintiff has been excluded from participating and attending court dates in the Custody Proceedings via the actions and decisions of (a) Hons. Fernandez and Ahern and Courtroom Coordinator Ebony Cheers, (b) the Court Disability Coordinator Elena Demos and Vincent D. Waller, and (c) through the Domestic Relations leadership under the supervision of

Hon. Scannicchio and via her deputy Adam P. Monreal Esq.

83.     Plaintiff here seeks *inter alia* a court order from this District Court directing the county to comply with the ADA. Through this lawsuit, she demands that Cook County afford individuals with disabilities an opportunity to participate in the county's court proceedings that is equal to that provided to nondisabled individuals.

84.     All citizens, including those with disabilities, should have an equal opportunity to observe (and, when they are parties, to participate) in the judicial proceedings in our land. Since the onset of the Covid-19 pandemic, virtually all state courts in our land have adopted the pattern and practice of allowing observation of and participation in court dates via Zoom video conferencing. Zoom has become the normative medium for conducting state judicial proceedings in fact. Even the state courts which are not Zoom-only are typically Zoom-enabled, in a so-called "hybrid" setup wherein all are welcomed to participate in person or via Zoom[8].

85.     Similarly, most of the federal courts utilize teleconferences for conducting the vast majority of court dates. Here in the Northern District of Illinois, teleconferences are normative. Gone are the days that the Dirksen Building was over-stuffed with attorneys, parties and observers. On a random weekday at the Dirksen Building, a typical courtroom of a District Judge would typically be attended by a courtroom deputy or two. Parties, attorneys and Hons. are very typically not physically present in the courtroom.

86.     Therefore, disallowing the use of Zoom – especially when one of the parties has disabilities flatly preventing in-person court attendance – implicates material questions about compliance with Title II of the ADA.

---

[8] One great example is provided by the courtroom of (elected, not appointed) Circuit Judge Catherine A. Schneider from the Law Division of Cook County. Judge Schneider is well perceived as one of the most outstanding judges in Cook County in that she is an exemplary lifelong learner and student of the law, dedicated always to dispassionate application of the law and always with unflagging integrity. Judge Schneider welcomes all litigants in her courtroom to attend via Zoom or in person.

87.     The timing of the capricious ban by Hons. Fernandez and Ahern of Zoom attendance (as ratified by Hon. Scannicchio and her Chief Deputy Clerk Adam Monreal) also appears retaliatory in response to the August 2024 filing of the Bribery Lawsuit under which lawsuit Kenton Girard seeks relief *inter alia* for violations of his civil rights by Cook County Hons. William S. Boyd and Renee G. Goldfarb and for RICO violations by opposing counsel Beermann LLP involving predicate acts of judicial bribery.

Defendants ignore the stay of proceedings and persist in their pugilistic approach.

88.     Effective on November 22 2024, when Kenton Girard filed a petition for substitution of judge for cause directed at Hon. Fernandez, the Custody Proceedings were stayed pursuant to the operation of 735 ILCS 5/2-1001(a)(3), under which Hon. Fernandez was judicially sidelined and the proceedings were paused in the absence of a judicial officer.

89.     The proceedings were also stayed pursuant to Cook County rules at the point at which Plaintiff timely submitted her appeal of the determination of ADA Elena Demos to ADA Vincent D. Waller. Such stay lasted until January 31 2025 when the ADA appeal was ultimately resolved by another attorney, Camela Gardner as explored *infra*.

90.     In spite of this effective double stay, in the morning of December 20 2024, Defendant Karen Paige at the direction of Jane F. Girard and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern noticed Plaintiff for a deposition to take place at 1:00 pm on that very day *in person* in Room 1905 of the Richard J. Daley Center.

91.     On December 17 2024, Attorney Karen Paige at the direction of Jane F. Girard and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern noticed Kenton Girard for a deposition to take place at 4:00 pm also in Room 1905.

92.     On December 30 2024, Attorney Karen Paige at the direction of Jane F. Girard

and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern propounded a motion to compel the depositions of Plaintiff and her husband Kenton Girard, in their typical pugilistic fashion seeking sanctions[9] for Plaintiff's failure to attend the deposition.

93.    On January 3 2025, Attorney Candace Meyers at the direction of Jane F. Girard and Enrico J. Mirabelli penned an ex parte letter to Hon. Ahern – who has been hand-picked by Defendant Scannicchio   to preside over the Custody Proceedings in the wake of Hon. Fernandez's recusal for cause – intentionally not copying third party defendants in that matter namely Detective Ryan McEnerney, Karen Paige and Vanessa Hammer.

94.    Such ex parte communication is strictly prohibited under Cook County Rule 17.1, and Hon. Ahern is further liable for failing to rebuke Attorney Candace Meyers on the record. Because Attorney Meyers has additionally failed to serve a written summary of the contents of her ex parte communication with Hon. Ahern on all parties within two (2) days of propounding her illicit missive, she stands further in breach of Cook County Rule 17.2(b).

95.    The ostentatious violations by Beermann LLP and its attorneys – all under the direction and supervision of Jane F. Girard and Enrico J. Mirabelli – continue to mount. On January 3 2025, Attorney Elster of Beermann LLP penned an 18-page-long (not counting exhibits) opposition brief[10] to Kenton Girard's petition seeking Hon. Fernandez's removal. Under Ill. S. Ct. R. 182(a), Kenton Girard is now duly entitled to twenty-one (21) days to fashion a reply brief, thereby making his reply brief due on January 24 2025. For this reason, the hearing

---

[9] The so-called "**Beermann Motion for Fees Playbook**" is explored in detail under the amended complaint Dkt[73] under the Bribery Lawsuit in this District. By way of a high-level summary, Beermann LLP and its attorneys are well-known and well-practiced as to propounding excessive and improper motions for attorneys fees in virtually all family court proceedings in which they handle. Kenton Girard is seeking damages under the civil RICO statute, in which he exposes a pattern of predicate acts including *inter alia* violations of the Hobbs Act for the extortionate practices under which Beermann LLP seeks excessive and unreasonable attorneys fees as part of its established modus operandi in the Domestic Relations Division in Cook County.

[10] Incidentally, under the Cook County Circuit Court Rules, briefs must abide by 15 page limits.

on Kenton Girard's petition to remove Hon. Fernandez cannot take place.

96.     As to the contents of that opposition brief, the highlight appears at p. 14: "All of Kenton's arguments about the court lacking jurisdiction after it uttered the phrase 'I will grant the motion' [sic] are simply without merit and detached from reality." Attorney Elster references the following exchange between Hon. Fernandez and Kenton Girard, as memorialized in the transcript of the hearing from October 18 2024 at pp. 4-5:

> **Mr. Girard:** Mr. Girard filed an SOJ as of right yesterday.
> **The Court:** You did?
> **Mr. Girard:** Yup.
> **The Court:** I did not see that. I'm sorry.
> **Mr. Girard:** I can deliver it to you right now if you'd like.
> **The Court:** Yeah. If you have the motion, I will take it. Okay.
> **The Court:** All right. **I grant your motion.**

97.     In reality, the briefs submitted by Kenton Girard in support of his petition to remove Hon. Fernandez adopt the position that Hon. Fernandez was divested of her jurisdiction not at the moment of her grant of Plaintiff's petition for substitution of judge as of right, but rather two days earlier *when Plaintiff timely filed her petition with the clerk on October 16 2024.*

98.     Setting aside the finer legal point of whether Plaintiff's petition operated to remove Hon. Fernandez upon filing or upon her pronouncement in open court, Hon. Fernandez was unambiguously divested of jurisdiction in the Custody Proceedings no later than the moment of her grant of Plaintiff's petition seeking her removal in open court on October 18 2024.

99.     Furthermore, under application of judicial estoppel based upon her own open court ruling – and preempting the inevitable motions to dismiss – Hon. Fernandez cannot mount the argument that her jurisdiction over the Custody Proceedings was never in question.

<u>Defendants have demonstrated an open disregard for open access to courtrooms.</u>

100.     Hons. Fernandez and Ahern and courtroom coordinator Ebony Cheers ignored all

subsequent written communication and telephone calls made from Plaintiff complaining about the improper "striking" of her petition, which happened after Hon. Fernandez divested herself of jurisdiction over the Custody Proceedings. Moreover, none of the involved staff from the Domestic Relations Division – including Hon. Scannicchio, Adam Monreal, Jaime Barcas, Hon. Ahern – responded in any way.

101.    Further email messages to Hon. Scannicchio and Adam Monreal after her office set a hearing date for Kenton Girard's petition to remove Hon. Fernandez were similarly unanswered. Adam P. Monreal Esq and Hon. Ahern flatly ignored Plaintiff's queries during this time. In one instance, Hon. Scannicchio's assistant Jaime Barcas responded with a condescending boilerplate email message containing instructions for pro se litigants.

102.    Furthermore, communications with Hon. Fernandez's Court Coordinator Ebony Cheers were met with a scowl. Ms. Cheers on two separate occasions indicated that she personally saw no reason to allow Plaintiff to participate in court dates via Zoom. Furthermore, she indicated that there were strong countervailing reasons to not allow participation by Zoom including (a) the proceedings were "contentious", and (b) Zoom participation raised serious safety concerns as to the parties. Ms. Cheers also indicated that neither Hon. Fernandez nor Judge Ahern would allow Zoom access under any circumstances whatsoever.

103.    The September 5 2024 status conference before Hon. Fernandez was not a closed proceeding, it was a general status call attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public. Similarly, the October 18 2024 case management conference was neither a closed proceeding, it was also attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public.

104.    Family court reform advocate Tina Swithin and investigative journalist were among the attendees of the September 5 2024 court date under the Custody Proceedings. Their purpose in attending was to obtain more first hand material and evidence to write about on their respective blogs and for the collective hundreds of thousands of followers consisting primarily in other victims of the family court system.

105.    On October 18 2024 when the SOJ as of Right matter was called, Hon. Fernandez granted the same. Subsequently goaded by objections lodged in open court by Enrico J. Mirabelli and at the direction of Jane F. Girard, Hon. Fernandez – who at that point had divested herself of jurisdiction – openly remarked "Marissa Girard is not here in person. So I am striking her motion. She knows she has to be here in person for all court dates." Those remarks were memorialized by a court reporter in attendance and reduced to a written transcript of the hearing.

106.    Hon. Scannicchio and Adam Monreal, as well as ADA personnel Elena Demos and Vincent D. Waller, collectively failed to ensure that Domestic Relations Hon. Fernandez's courtroom was accessible to Plaintiff because *inter alia* Plaintiff was actively refused egress to the proceedings from the court's Zoom waiting room during the October 18 2024 proceeding.

107.    Plaintiff has been injured as a result of the Defendants' conduct and has sustained humiliation and emotional distress. None of Hons. Fernandez, Scannicchio, Ahern or domestic relations staff Adam Monreal and Ebony Cheers enjoy either judicial nor qualified immunity because the decision to deprive Plaintiff of her constitutionally protected right was an *administrative action* and not subject to judicial immunity and the right to attend public judicial proceedings is a *well-established right* and its violation is not protected by qualified immunity.

The Defendants have concocted a counterfactual narrative.

108.    The denial letter of November 1 2024 from CDC Demos states that Plaintiff

participated or observed via Zoom during the September 5 2024 court date under the Custody Proceedings. Such participation did not take place and is controverted by Zoom logs. The denial letter's further claim that cameras were being disruptively turned on and off is refuted by thirty or more witnesses who observed the proceedings under the September 5 2024 court date.

109.    Furthermore, the notion that there was a concern that participants were recording the court date via Zoom is unsubstantiated. Moreover, that would appear to be a generic concern for all of the millions of court proceedings which take place throughout the state courts in our country every month.

110.    Finally, the actions of third-party court observers (including family court reform advocate Tina Swithin, who was present during the court date) cannot be construed as a legal foundation to permit or deny Zoom accommodations for Plaintiff. To wit, under the ADA reasonable accommodations must be based on the individual's specific disability, the feasibility of the requested accommodation and the fundamental requirements of the proceeding.

111.    As discussed, CDC cited alleged "serious safety concerns" attendant to the parties participating in court dates via Zoom. How virtual participation could lead to concerns about physical well-being has not been explained. Nor could it be explained, because it is a purely fictitious narrative.

112.    The court's threat to have Sheriff's Deputies present appears to be nothing more than an intimidation tactic, because there is no underlying safety concern other than one which might be manufactured by forcing in-person court dates under the pressure of the high-conflict Custody Proceedings. This threatening approach not only fundamentally misapprehends Plaintiff's medical and palliative needs, but appears to be calculated as a form of retaliation against Plaintiff for exercising her legal right to demand accommodation under the ADA.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

113. The no-Zoom order of Hon. Fernandez constitutes a deliberate disregard for Plaintiff's safety and well-being from another perspective also. In late May 2024, Plaintiff obtained an emergency Stalking No Contact Order ("SNCO") against Jane F. Girard. By forcing Plaintiff to be physically present – feet away from – Jane F. Girard, is subjecting Plaintiff to physical danger.

114. Finally, the characterization of the proceeding as "contentious" is unreasonable. At no point during the nearly three year history of the Custody Proceedings were there any incidents whatsoever of raised voices, disruptive behavior, threats or lack of respect for the court. More to the point, there has been judicial finding or sanction handed down by any of the eight separate judicial officers who have presided over the Custody Proceedings.

115. Plaintiff has consistently provided comprehensive medical documentation underlying the need for Zoom attendance. Her attempts to share a confidential letter from her physician, under seal, have been furthermore denied. Again counterfactually, CDC Demos only asked for specifics as to Plaintiff's disabilities specifically after the conclusion of the October 18 2024 Case Management Conference. Moreover the Cook County Court has disregarded its requirements to engage in good faith dealing regarding needed accommodations.

Defendants have ostentatiously and vexatiously refused to accommodate Plaintiff.

116. Plaintiff has been fighting for express permission from Hons. Fernandez, Scannicchio, Ahern (and more recently, Yu) to allow her to attend court remotely via Zoom. The denial of these numerous requests appears to be based on factual inaccuracies, demonstrates apparent retaliation for protected legal actions, and has been compounded by subsequent procedural violations that further discriminate against Plaintiff based on her disabilities.

117. It is noteworthy that prior to these recent denials under the installation of Hons.

Fernandez and Ahern over the Custody Proceedings, all of Plaintiff's previous requests for Zoom access had been granted without issue. Every single prior court date has been successfully conducted over Zoom, with no problems or incidents. Significantly, no judge who has presided over these proceedings has ever (a) expressed any concern about Plaintiff's participation via Zoom, (b) characterized the Custody Proceedings as contentious, (c ) raised any safety concerns connected with attendance of court dates via Zoom, or (d) questioned the appropriateness of allowing Plaintiff to participate in court dates via Zoom.

118.    This established history includes (a) successfully granted ADA accommodations, (b) effective remote court participation, (c) proper conduct during all previous Zoom proceedings,  (d) consistent accommodation of Plaintiff's disabilities.

119.    Seven previous judges accepted and facilitated remote participation via Zoom without incident during the history of the Custody Proceedings. This makes the current spate of denials under Hons. Fernandez and Ahern are particularly puzzling and suggest the lack of any legitimate underlying evidentiary foundation. The abrupt reversal of these previously granted accommodations, which had effectively served their purpose throughout our proceedings, strongly suggests that this denial is motivated by factors unrelated to the merit of the accommodation request or any legitimate court concerns.

120.    Remote court attendance via Zoom has been successfully used previously in the Custody Proceedings, is widely implemented throughout the state courts in our land, creates no undue burden on the court and does not fundamentally alter court proceedings. Moreover Zoom decreases operating costs for the courts which employ it. Fewer bodies in the courtroom necessitates fewer courtroom deputies, security personnel and other court administrators.

121.    The about-face reversal by Hons. Fernandez and Ahern as to Zoom participation

implicates their impartiality as judicial officers, creates substantial concerns about their respect for the force and effect of federal law and the Constitution, creates questions about their motives and potential retaliatory animus and suggests a lack of consistency in their own decision-making. <u>A self-reinforcing cycle of harm has resulted.</u>

122.    The denial of this accommodation, combined with threats made against Plaintiff by Hons. Fernandez and Ahern and the apparent retaliation for filing a federal lawsuit, has exacerbated Plaintiff's medical condition. This creates a cycle wherein the denial of accommodation worsens Plaintiff's condition consisting of the following adverse impacts:

**a.** The worsening of Plaintiff's condition amplifies her need for ADA accommodation.
**b.** The threats and hostility further impact Plaintiff's health.
**c.** The retaliatory nature of these actions causes additional stress and anxiety.
**d.** The retaliatory timing roadblocks Plaintiff's constitutional right to seek a remedy.
**e.** Forcing in-person attendance triggers PTSD[11] symptoms.
**f.** These PTSD symptoms directly worsen Plaintiff's medical conditions.

123.    The Defendants' gross mishandling of these connected conditions demonstrates their failure to understand or properly accommodate disability needs. The compounding effect of these violations includes (a) creation of an inaccurate court record suggesting "non-appearances" when legally proper notices and motions were filed, (b) prejudicial treatment of properly filed legal motions based on disability status, and (c) additional psychological stress from having rights violated while being physically unable to attend and defend against improper procedures.

124.    Investigative Journalist Michael Volpe captured this dynamic in his column on substack in after observing the September 5 2024 court date under the Custody Proceedings:

The action began when Tina Swithin, from One Mom's Battle, logged on. She told me she was about fifteen minutes late, but Hon. Fernandez quickly took notice. Tina told me that she routinely court watches, and her general protocol is to turn her microphone and video off, because having them [on] can cause a distraction. Hon. Fernandez saw it differently. She quickly

---

[11] The EEOC regulations specifically identify conditions that should easily be concluded to be disabilities. Such listing includes PTSD.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

demanded her video on, and for Tina to identify herself. Tina turned her video on and wrote that she was an observer for the Girard case. "As soon as she saw that, she was fuming," Tina told me. "She basically accused us of harassing the court." Tina called Fernandez "unhinged.

The dialogue with CDC Elena Demos JD goes nowhere.

125.    On September 12 2024, Plaintiff emailed Defendant Demos advising her that due to her disability, she would be unable to attend the in person Case Management Conference ordered by Hons. Fernandez and Ahern and set for October 18 2024. In this email, Plaintiff specifically requested the right to participate in the upcoming court date via Zoom, in keeping with the manner in which she was previously allowed to participate in the Custody Proceeding before the half dozen other Hons. who preceded the appointment of Hons. Fernandez and Ahern thereunder.

126.    Receiving no response whatsoever from Defendant Demos, Plaintiff emailed Defendant Demos again on September 23 2024 requesting an update on her request to participate in the court date via Zoom. Defendant Demos responded the following day, reporting that Hons. Fernandez and Ahern had not yet weighed in on the matter.

127.    Another week went by without any further response from Defendant Demos, and Plaintiff again requested an update from her, wherein Defendant Demos finally got back to her after the elapse of another week on October 4 2024, stating:

> Ms. Girard,
> I have communicated your accommodation request to the judge.  There are a number of important reasons why the judge has scheduled these court dates in-person.  If you are unable to attend in-person on October 18, 2024, you can file a motion that the case be heard on a different date where you will be able to attend in-person.
> Thank you. Elena Demos, J.D.

Ironically, under the "take two" reasoning of Hons. Fernandez and Ahern on October 18 2024, no motion will be allowed by Plaintiff unless presented in person – thereby excluding her totally from the courtroom.

128.    Plaintiff did not take long to craft her reply on the very same day, writing:

Dear Ms. Demos,
Thank you for your response. However, I must express my deep disappointment and concern regarding the handling of my accommodation requests over the past year.

As the ADA Coordinator, I expected your office to facilitate reasonable accommodations for my disability, as required by law. Instead, I've encountered repeated barriers and delays. The suggestion to file a motion for a different in-person date does not address my need for a remote attendance option due to my medical condition.

I would like to remind you that the Americans with Disabilities Act requires courts to provide reasonable accommodations to ensure equal access to justice. Remote attendance is a common and reasonable accommodation, especially given current technological capabilities.

Your response appears to prioritize the court's preference for in-person hearings over my legally protected right to accessible proceedings. This approach seems to contradict the spirit and letter of the ADA.

I formally request:

1. A detailed explanation of why remote attendance cannot be accommodated.
2. Information on how to file a complaint regarding the continued failure to provide reasonable accommodations.
3. A solution that respects both the court's needs and my rights under the ADA.

I hope we can resolve this issue promptly and ensure that the court fulfills its obligations under disability law.

129.    Again waiting a full week to respond, on October 10 2024 Defendant Demos wrote to Plaintiff indicating that after consulting Hon. Fernandez, Plaintiff's participation by Zoom was out of the question because "[t]he court proceeding is being held in person because Zoom attendance was very chaotic, and the court is considering the safety of the parties.  There will be Sheriff's Deputies present in court."

130.    Indeed, after the stunning refusal by Hon. Fernandez (and duly ratified by Hon. Ahern) conveyed by Ms. Demos on October 10 2024, that very same day Plaintiff reached out to Hon. Fernandez's court coordinator, Defendant Ebony Cheers. At all times in question, Ebony Cheers served as the courtroom coordinator for Hons. Fernandez and Ahern since her installation in her courtroom at the Daley Center, which took place on or around Summer 2024 after a stint

on the bench in Rolling Meadows.

131.    In this capacity, Defendant Cheers also had an obligation to ensure that appropriate measures were taken to reasonably accommodate Plaintiff in light of her documented mental and physical disabilities. However, Plaintiff's request for reconsideration of her accommodation by Defendant Cheers was flatly denied. Whereas Ms. Demos deferred to Hon. Fernandez as the final say on whether Plaintiff would be allowed to participate in court dates via Zoom, Defendant Cheers flatly denied Plaintiff's request stating plainly that "she was in charge of courtroom matters for Calendar 99" and she did not see any reason to grant Zoom access.

132.    The "chaos" referenced by Ms. Demos was presumably a reference to the prior court date of September 5 2024 (indeed previous to the October 18 2024 Case Management Conference, the only court date presided by Hon. Fernandez in the Custody Proceeding was on September 5 2024). How participation by Zoom could imply a threat to the safety of the parties is certainly difficult to comprehend. But the remedy of ordering those very same parties who caused "chaos" via their remote attendance – **to such a degree that their physical safety was threatened** – to appear in person is absolutely nonsensical. One can only reasonably interpret the imposition of in-person attendance as a form of punishment, and the promised attendance by Sheriff's Deputies minimally an admonition or more likely outright intimidation.

133.    Allowing the October 18 2024 court date to pass before replying via email again to Plaintiff, Ms. Demos appeared to backpedal stating that Hons. Fernandez and Ahern had not yet decided on whether to allow Plaintiff to participate in the remaining court dates in the Custody Proceeding via Zoom. In the same email, Defendant Demos asked Plaintiff to explain the nature of her disability preventing her from attending court in person.

134.    Plaintiff responded on the very same day that she had been diagnosed by her

physician with interstitial cystitis as well as PTSD (post-traumatic stress disorder), and as a result of her medical conditions she suffers from chronic and debilitating pain as well as a constant need to urinate. Additionally, Plaintiff noted that she has to manage severe side effects from the pain medication which impair her motor skills.

135.    Making matters worse, Plaintiff's condition is exacerbated by stress and, under stressful situations (such as her physical presentment in court, under the high-conflict Custody Proceedings), she is at great risk for the onset of debilitating anxiety attacks, locomotive degradation and aphasia. The unnecessary stress caused by Hons. Fernandez and Ahern's refusal to allow Plaintiff to participate by Zoom was likely exacerbating her medical conditions.

136.    Plaintiff sent a follow-up email message to Defendant Demos on October 21 2024, addressing their shocking disregardment of her disability:

> I am following up on this email. My health has been severely affected by the stress of what happened Friday and the previous week, including you not communicating ANYTHING to me before the court date despite my giving you and the Judge over a MONTHS notice that I was not available and undergoing treatment due to my disability. I also made every effort to be given the opportunity to be present over Zoom which was not granted to me, with no explanation given.
>
> The gall of the Judge to go ahead with this hearing and then to call out my name in court, knowing FULL WELL that I would not be there due to my disability was further confirmation that she knew exactly what she was doing and was trampling over my rights - is beyond wrong and illegal. She then ignored my Substitution of Judge For Right with NO LEGAL BASIS AT ALL, as the SOJ does not require a party to be present to serve this. I filed a proper written application and it was served properly and Hon. Fernandez knowingly ignored my rights with your blessing.

Defendants Demos, as well as Hons. Fernandez and Ahern, remained silent in response.

137.    Plaintiff again wrote to Ms. Demos on October 28 2024:

> Additionally, I am extremely concerned about the threats made by Hon. Fernandez, who had Deputy Sheriffs present in an apparent attempt to intimidate me. This would have caused me even greater extreme emotional distress had I been able to attend in person and has contributed to my fear of appearing in person for any future date regardless of my health status.
>
> I am shocked and disappointed that as the ADA coordinator, the accommodations I require are instead being minimized, mocked, and threatened. This is unacceptable and a clear violation of my rights under the Americans with Disabilities Act.

Again Defendant Demos refused to respond to Plaintiff, in an obvious affront to proper procedures under requesting of reasonable accommodations under the ADA.

138.   Additional follow-up telephone calls to Defendant Ebony Cheers and the clerks for Hons. Fernandez and Ahern also proved futile. Ms. Cheers again reiterated that she saw "no good reason to allow [Plaintiff] to use Zoom", and she further noted that Hon. Fernandez "**does not appreciate court watchers**", so everything would be in person from that point forward.

139.   On November 1, 2024, Defendant Demos sent a written response to Plaintiff regarding the court's refusal to allow Plaintiff to attend court via Zoom, stating in relevant part:

> [T]he judge had prohibited litigants in the case from attending court hearings via Zoom due to the highly contentious nature of the proceedings, the fact that the parties would turn their Zoom cameras off and on, would address each other instead of the court, and would generally not comport with the proceedings of the court. There was also a concern that it was unable to be ascertained whether any of the parties were recording the court proceedings. As a result of the contentious nature of the proceedings, all parties were ordered to appear in person and Sheriff's Deputies were secured for each court appearance to maintain order.

140.   Of course, any dispute in court is inherently adversarial. Hereunder, the proceedings for over two years have consisted primarily in court dates conducted over Zoom. As to the position adopted by Hons. Fernandez and Ahern, multiple eyewitness accounts during the first hearing with Fernandez plainly contradict her story of the first hearing she presided over.

141.   Also in her written response to Plaintiff, Ms. Demos states "Decisions on ADA accommodation requests are made by the judge in the case. The OCJ ("Office of Chief Judge") CDC ("Court Disability Coordinator", i.e. Elena Demos) acts solely as a liaison between the individual making an ADA accommodation request and the judge in the case." This statement makes it very clear that Hon. Fernandez has personally made the statements contained in this response. Her statements are a clear distortion and misrepresentation of the facts.

142.   The "safety of the parties" requiring in-person attendance of all Court Dates (at

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

which Sheriff's Deputies would be present in appropriate numbers) cannot possibly be understood as a conclusion built on rational assessment of circumstances. Because there is evidently no logical reasoning which underlies this conclusion. Instead, the capricious revocation of attendance of court dates via Zoom is a barely disguised means of harassment and intimidation targeting the Plaintiff, and further calculated to distress her husband Kenton Girard who is also party to the Custody Proceedings.

143. According to the November 1 2024 letter from Defendant Demos, furthermore, Plaintiff needs to propound her request for Zoom accommodation again. However, such request at this time appears to be mooted by the fact that Hon. Fernandez has suddenly and inexplicably allowed Zoom participation as to court dates to once again resume, per the standards which have been well-ingrained since the onset of the Covid-19 pandemic across all state courts in our land.

Domestic Relations Presiding Hon. Scannicchio's office ignores the issue.

144. In early December 2024, Plaintiff made numerous efforts at outreach to Presiding Hon. Scannicchio's office via Executive Assistant Jaime A. Barcas, to no avail. On two instances, Mr. Barcas replied with condescending canned responses including resources for pro se litigants.

145. In another instance Hon. Scannicchio's assistant Jaime Barcas indicated that the Office of Presiding Judge Scannichio had no involvement with accommodations for persons with disabilities, but failed to identify the proper channels for requesting the same.

146. On December 12 2024, Plaintiff emailed Chief Deputy Clerk Adam P. Monreal Esq seeking his intervention to clarify that she would be able to participate via Zoom in all future court dates under the Custody Proceedings. Similar to her outreach to Jaime A. Barcas, Mr. Monreal has flatly ignored Plaintiff's questions and entreaties in their entirety.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

<u>Vincent D. Waller JD handles the ADA appeal.</u>

147.    On November 11 2024, Plaintiff filed an appeal of the November 1 2024 disposition by CDC Demos as to her request for ADA accommodation consisting in the ability to attend all court dates via Zoom.

148.    This appeal utilized a review process instituted and approved by the Supreme Court of Illinois, wherein a different Court Disabilities Coordinator ("CDC") would be responsible for reviewing the decision of CDC Demos. In this particular instance, the reviewing CDC assigned to Plaintiff's appeal was Vincent D. Waller JD[12].

149.    Extensive back-and-forth emails between Plaintiff and Mr. Waller ensued. On November 25 2024, Mr. Waller indicated that he had hoped to construct a response to her appeal that week. Mr. Waller asked for evidence of previous accommodations which had been accorded to Plaintiff, and she duly noted that she had been excused from jury duty and that prior to October 18 2024, she had been permitted to participate via Zoom at virtually all court dates.

150.    In another matter before Hon. Michael Weaver, Plaintiff was also allowed to participate via Zoom. Among other points, Plaintiff noted that she suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home, particularly when exacerbated by stress. Having her medical condition discussed in court without her presence has been both traumatic and humiliating, and as noted in her appeal, her PTSD from this ongoing case further aggravates my physical symptoms.

151.    On December 12 2024, Mr. Waller inquired about the timeline for when Plaintiff's course of medical treatment would be completed. She responded that treatment will

---

[12] While the Cook County appeal form utilized for her appeal of the ADA accommodation denial by CDC Demos lists Vincent Waller as occupying the role of another CDC in the Cook County Court, his email signature lists his official position as "Human Resources Assistant Administrator, Office of the Chief Judge, Circuit Court of Cook County".

continue for the foreseeable future.This response was particularly enervating because Hons. Fernandez and Ahern had the previous week ostensibly re-allowed attendance of all court dates via Zoom. However ambiguity remained because there was no court order allowing the same.

152.    Because Plaintiff's appeal of the ADA accommodations denial by CDC Demos was filed within fifteen (15) days of the date of the denial, it timely operates to cause a stay of the Custody Proceedings in all respects.

153.    Additionally, Plaintiff has moved for a stay of the Custody Proceedings in all respects until the adjudication of the appeal of the denial of her ADA accommodation has been completed, presumably by Vincent D. Waller. For that reason, the Custody Proceedings are currently in a kind of "Twilight Zone".

<u>Plaintiff petitions to remove Hon. Fernandez.</u>

154.    On October 16 2024, Plaintiff filed a petition for substitution of judge ("SOJ") as of right under the authority of 735 ILCS 5/2-1001(a)(2), her first such petition in the family law proceeding hereunder. Because her application was timely presented before the evidentiary hearing and before Hon. Fernandez had ruled on any substantial issue in the case in the family law proceeding, that application operated to remove Hon. Fernandez from the proceedings[13].

155.    As a consequence, the proceeding presided by Hon. Fernandez on October 18 2024 was in effect *ultra vires*. The decisions and actions by Hon. Fernandez at the October 18 2024 court date constituted nothing more than "playing judge" and therefore do implicate legal or judicial orders.

---

[13] In the court date on October 18 2024, upon receipt of Plaintiff's Petition for SOJ as of Right, Hon. Fernandez first states "So, I'm going to grant your motion". Then Mr. Mirabelli in opposition to the paper suggests that Plaintiff must be present to argue the motion, and Hon. Fernandez thereby ruled – after she had divested herself of jurisdiction – that she was striking the SOJ as of Right.

156. Hon. Fernandez moreover does not enjoy judicial immunity post October 16 2024. Under a strict reading of the substitution of judge statutory language, it is indeed unnecessary for a judicial officer to "ratify" or indeed to expend any discretion whatsoever as to a properly presented application. The paper filed by Plaintiff hereunder represented her first request for SOJ and was accepted by the clerk, and it did not implicate timeliness concerns.

157. At best, a judicial officer targeted by a petition for SOJ as of right may perform the nominal and administrative task of confirming the effect of the petition with a docket entry. As a result, prongs (2) and (3) of *Dawson v. Newman*, 419 F. 3d 661 (7th Cir. 2005) both fail: under no colorable circumstances was Hon. Fernandez to take any action other than possibly ratifying the force and effect of the SOJ petition brought against her. Litigants from throughout our state and through the decades have come to expect that granting of their first timely SOJ petition as of right is a formality at most.

158. As a result, all actions, orders and directives of Hon. Fernandez signed or propounded after the filing of Plaintiff's petition for SOJ on October 16 2024 are void ab initio. The current status is that every single decision, order and action taken by Hon. Fernandez after approving Plaintiff's petition for SOJ as of right as the first order of business before the court on October 18 2024 – including denying pending motions for a stay and for intervention, and setting an omnibus scheduling order leading up to the ultimate evidentiary hearing – was without jurisdiction and must be wholly undone.

159. The events of the September 5 2024 court date were shameful to behold and raise significant questions about the judicial temperament and bias of Hon. Fernandez. On September 5 2024, Hon. Fernandez held her first hearing hereunder. The current custody modification proceeding has been active for over two (2) years and none of the previous judicial officers

(including without limitation J. William S. Boyd and J. Renee G. Goldfarb) had any issues holding Zoom hearings in this case.

160.     During this hearing, Hon. Fernandez did not allow Petitioner to speak other than when she asked him to supply truncated single word responses to questions posed (whereas opposing counsel was allowed to speak at length). She also entered a facially questionable decision that all future court dates should be in person not over Zoom, thereby (and perhaps intentionally) complicating attendance for Plaintiff who requires participation via Zoom.

161.     One of the court watchers in the September 5 2024 court date was Tina Swithin (@onemomsbattle) who made the following Instagram post highlighting what happened during this hearing. Tina stated:

> Never have I ever – this morning, I logged on to watch a public hearing in the case of @justiceforgwenandgrace. I invited a group of students who have an interest in family court advocacy and reform. I have been attending court watches for years as an advocate – both in person and online. Never have I ever seen a judge completely unhinged and visibly ANGRY that there were court watchers. Typically, it is courtesy to have cameras and microphones off, which is what I did and what I instructed the students to do. She threatened to take people out of the zoom call if cameras weren't turned on immediately, so we all complied. Then she said names needed to reflect the case you were present for: I immediately changed my name to "Tina Swithin: Observer of Girard case."' As soon as she saw that, she was fuming and accused us of harassing the court for being present AT A PUBLIC HEARING. She then threatened to order that future court dates for this case be in-person only. Show me a judge wanting to keep things out of the public eye and I will show you a red flag.

> Show me a judge that has a problem with court observers and I will show you a red flag. Court watching is the practice of observing courtroom proceedings to ensure transparency, accountability, and fairness…As described by the American Bar Association: The right of public access to court proceedings is enshrined in the Constitution. The First Amendment to the Constitution gives the public and press a right of access to court proceedings. Requiring the work of the courts to be conducted in public view provides an important check on the potential for abuse of power, allowing observers to better understand how the justice system operates and enhancing public confidence in the courts.

Following that hearing investigative journalist Michael Volpe published an article raising serious

questions about Hon. Fernandez's temperament, wherein he includes material from his own interview with Tina Swithin.

The judicial authority of Hons. Fernandez and Ahern has been degraded.

162.    Plaintiff has been blindsided by additional trauma because of Hons. Fernandez and Ahern's obvious gamesmanship which has been calculated to maximize emotional distress for Plaintiff. To wit, the recent December 3 2024 court date (for presentment of a nominal motion by Beermann LLP) was affirmatively allowed over Zoom, when this Court made an extremely heated pronouncement just weeks earlier that all court dates would be in person.

163.    Indeed, ADA compliance personnel have reduced Hons. Fernandez and Ahern's commands to writing in their correspondence with Plaintiff. The arbitrary nature of these decisions regarding in-person versus remote attendance, particularly when they resulted in the improper denial of Plaintiff's statutory right to one (1) substitution of judge upon timely application, has caused Plaintiff significant additional mental anguish and emotional distress.

164.    Given her pre-existing mental impairment, documented by years of treatment by her physician, this is no trivial matter. The judiciary in our land first and foremost must honor our sacred Constitution; the ways in which Hon. Fernandez has abused her power to inflict extremely serious harm upon the rights of Plaintiff and court watchers is shocking to behold.

165.    The October 18 2024 court date was not a closed proceeding; it was attended by numerous litigants and attorneys with different matters before the Court none of which were closed to the public. However, Plaintiff was attempting to join via the Court's Zoom credentials and was actively turned away by Hons. Fernandez and Ahern and Ebony Cheers.

166.    Indeed, Plaintiff had important business before the Court, namely her first petition under these proceedings to effectuate a Substitution of Judge as of Right. However, she was never admitted access to the Court's Zoom session. Plaintiff has sustained humiliation and emotional distress as a result of Hon. Fernandez's vexatious refusal to allow Plaintiff to participate in the proceeding via Zoom.

167.    Absent action protecting the rights of free access to courtrooms for the public, the Cook County family court's credibility has been further tarnished by the actions of Hons. Fernandez and Ahern. The right to attend public judicial proceedings is a well-established right,

168.    Moreover, Hons. Fernandez and Ahern do not enjoy judicial immunity because the decision to deprive Plaintiff of her constitutionally protected rights by denying her access to the proceedings via Zoom was an administrative action. This egregious and hostile denial of access to the proceedings on October 18 2024 was an impermissible violation of Plaintiff's First Amendment rights.

169.    Hon. Fernandez expressed her discontent with the presence of court watchers at the court date on September 5 2024. Questioning of some of the court watchers in attendance has revealed Hon. Fernandez directed her courtroom staff to disable certain of the court watchers' Zoom access to the proceedings during that court date.

170.    Certain of those attendees (including family court reform advocate Tina Swithin) were there in an expression of solidarity with the minor children whose lives are at issue in the Custody Proceedings. Hon. Fernandez's grotesque disregardment of the First Amendment rights of these civic-minded court watchers is a grotesque affair from every point of view.

Kenton Girard brings SOJ for cause against Hon. Fernandez.

171.    Following Hon. Fernandez's flouting of her own subject matter jurisdiction after

granting Plaintiff's SOJ as of right, Kenton Girard filed his own petition for SOJ for cause against Hon. Fernandez on November 22 2024.

172.    Inexplicably, Hon. Fernandez slow-walked the processing of Kenton's petition seeking her removal for cause, inexplicably convening an additional court date[14] and issuing an amendment to the case management order (relating to written and oral discovery deadlines) which she had originally entered on October 18 2024. Ultimately, about two weeks later, she acknowledged the petition and the domestic relations matter was transferred to Calendar 1 for appointment of a judge to referee the hearing on Kenton's petition against Hon. Fernandez.

173.    Curiously, Hon. Ahern – who frankly shared culpability under many of Kenton's enumerated points against Hon. Fernandez as described in the foregoing paragraphs and is furthermore plainly not fit to be on the bench – was selected by Hon. Scannicchio to referee the hearing on his petition. The hearing date of January 9 2025 was set by Hon. Scannicchio.

174.    Soon after former President Jimmy Carter died (December 29 2024), Kenton received an invitation to attend the state funeral for Jimmy Carter at the National Cathedral in Washington DC on January 9 2025. Over his filed notice on the Cook County docket as to his unavailability on such date, Hons. Scannicchio and Ahern insisted on maintaining the court date of January 9 2025. Incredibly, all federal courts and nearly all federal offices and state courts including in Cook County were closed in honor of Jimmy Carter's memory – yet the Domestic Relations Division of Cook County decided to make a special exception for Kenton Girard.

175.    Hon. Ahern proceeded to conduct a non-hearing, in which Beermann LLP attorney Howard London was present. An observer of the court date has testified to Attorney London and Hon. Ahern belittling a) the fact that Kenton Girard would attend Jimmy Carter's

---

[14] Under the provisions of 735 ILCS 5/2-1001(a)(3) upon receipt of a petition seeking substitution of a judge for cause, the targeted judge is immediately sidelined pending adjudication of the petition at a hearing convened by a distinct judge appointed for such express purpose.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

funeral, and b) the idea that the national day of remembrance of Jimmy Carter should stand in the way of their court date, and c) the prospect that Kenton Girard would be "unavailable"[15] to attend court approximately one hour after the funeral service in Washington DC concluded.

176.    The same observer of the court date has further testified that no argument was advanced regarding Kenton's petition, and Hon. Ahern took the matter under advisement – in violation of the statute by not conducting a hearing. A few days later, Hon. Ahern denied the petition. Indeed, it is a virtual certainty that a petition to remove a Cook County judge is denied.

Hon. Scannicchio transfers the matter to Calendar 51 … then 99 … then 89.

177.    On January 14 2025, this matter was transferred from Calendar 1 to Calendar 51 pursuant to Hon. Scannicchio's reasoned review of a "Safe Harbor Letter"[16] filed on the docket on the previous day by Kenton Girard, and pursuant to Hon. Scannicchio's apparent consultations with Hon. Gregory E. Ahern who had just penned an inexplicable opinion absolving Hon. Fernandez of any impermissible bias.

178.    Calendar 51 is presided by Cook County Domestic Relations Judge Ellen Flannigan. However, wholly lacking a request by the parties or by Judge Flannigan, the matter was returned to Calendar 1 on ~January 23 2025. Multiple court filings between January 14 and January 23 2025 bore the stamp of "Calendar 51", however the judicial transfer orders to and from Calendar 51 were never filed on the docket in contravention of subject matter jurisdiction

---

[15] It is customary on the day of a funeral to remain in prayer for the deceased, especially under the Judeo-Christian traditions. In keeping with such customs, Kenton Girard remained in observant prayer for the passing of Jimmy Carter for several hours – physically remaining in Washington DC – after the funeral service at the National Cathedral.

[16] In his Safe Harbor Letter, Mr. Girard advised Hon. Scannicchio that he would be attending former President Jimmy Carter's state funeral at the National Cathedral in Washington DC on January 9 2025. It further underlined due process concerns with the proposed January 9 2025 court date: Beermann LLP attorney Matthew D. Elster filed an 18-page opposition brief to the petition for SOJ for cause directed at Hon. Fernandez on January 3 2025. Under Ill. S. Ct. R. 182, Plaintiff and Mr. Girard would be duly accorded 21 days within which to prepare a reply brief. As a result, convening a hearing on January 9 2025 would be manifestly against the interests of justice and fairness, and moreover a violation of due process rights enshrined under the Illinois Supreme Court Rules.

requirements[17]. Multiple requests from Plaintiff and Kenton Girard to produce said transfer orders were ignored by Hon. Scannicchio and her staff, and remain "missing" and unfiled.

179.    Things got even weirder wherein Hon. Scannicchio subsequently transferred the jurisdiction yet again back to Calendar 99/Hon. Fernandez on January 23 2025. As Plaintiff opined in her "Motion for Stay and Repair of Jurisdiction" filed on January 27 2025, Hon. Scannicchio has already been outed for accepting bribes for desired judicial outcomes from Beermann LLP for most of the last decade (see Bribery Lawsuit, Dkt[73] at ¶¶ 4, 9, 52-56).

180.    The inference that a presiding judge of an entire judicial division would be deliberately concealing a judicial transfer order from the docket and the parties would normally feel like a "bridge too far". However, given that Hon. Scannicchio is a bribed judge just like her now-recused and disgraced colleagues William S. Boyd and Renee G. Goldfarb, it is unfortunately unsurprising to see her brazenly commit perjury and take premeditated action in violation of 18 U.S. Code § 1512: (c)Whoever corruptly— (1) alters, destroys, mutilates, or **conceals a record**, document, or other object, or attempts to do so, **with the intent to impair the object's integrity or availability** for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

181.    The disgusting reality is that the Domestic Relations Division appears to be an arm of the Chicago Outfit controlled by Hon. Scannicchio's real boss: Beermann LLP managing partner and capo John M. D'Arco Esq (see Bribery Lawsuit, Dkt[73]). Hon. Scannicchio lacks a

---

[17] Subject matter jurisdiction cannot be waived. Similar to how the State of Frauds requires transfers of title to real estate to be reduced to writing and filed with the recorder, judicial transfer orders must also be reduced to writing and filed on the docket. Restarting legal proceedings before a new court without a judicial transfer order docket entry would be similar to trying to close on a real estate deal with a dirty title.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

first year law student's understanding of basic legal principles and constitutional rights, and she brazenly operates with tyrannic indifference to the rule of law. Just as Kenton Girard has painted Hon. Fernandez in recent court filings, Hon. Scannicchio also is a true cancer on the judiciary. Her exploits should be the subject of a grand jury investigation in the Northern District of Illinois and she should be removed from the bench.

182.    Likely bowing to pressure from the Attorney General's Office (which is representing Hon. Fernandez hereunder), Hon. Fernandez recused herself on January 27 2025. A day later, Hon. Scannicchio transferred the matter to Calendar 89/Judge William Yu, this time recording the judicial transfer order on the docket.

The Cook County ADA appeal continues to languish.

183.    Casting more doubt about the status and likelihood of timely conferral of reasonable accommodations under the ADA to TP Respondent, Cook County Assistant State's Attorney Silvia Mercado Masters has updated Plaintiff that as of January 24 2025 (a) the Cook County ADA appeal remains fully unresolved, (b) Vincent D. Waller has been relieved of his assignment, and (c) there is no one currently handling the ADA appeal on behalf of Cook County. Indeed, it appears that Vincent D. Waller has undertaken no efforts whatsoever to responsibly administer his responsibilities viz-a-viz Plaintiff's Cook County ADA appeal.

184.    Indeed, Camela Gardner from the Office of the Chief Judge of Cook County tendered a written denial as to Plaintiff's Cook County ADA appeal on January 31 2025 under the theory that allowing Plaintiff to attend court dates via Zoom would represent an inordinate and unreasonable imposition on the court. Such words are incredulous given that virtually all court dates in Cook County take place via Zoom, including the Domestic Relations courts. Indeed nearly all court dates in state courts throughout our land have adopted Zoom.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

185. Upon information and belief, Ms. Gardner was performing the bidding of Hon. Scannicchio and the judges under her supervision on the domestic relations matter (including *inter alia* Hon. Fernandez and Judge Yu) who have taken it upon themselves to weaponize ADA accommodations against Plaintiff – instructing Ms. Gardner to deny Plaintiff's accommodations.

Judge Yu eagerly engages in ADA abuses and multiplies jurisdictional defects.

186. The history under Judge Yu has been similarly egregious. On February 7 2025 – over the express and explicit warnings of Plaintiff, duly filed on February 4 2025 on the docket under a "Notice as to her Health and TP Claims", not to proceed because she had been ordered to observe a 75-day period of medical leave – Judge Yu aggressively struck Plaintiff's TP Claims filed thereunder and set the proceedings for a trial set for May 1-2 2025.

187. Judge Yu's order from February 7 2025 furthermore presents clear and obvious problems on its face, because *he confirms the fact of his subject matter jurisdiction*. In reality, without the judicial transfer orders to and from Calendar 51 from January 14 2025 and January 23 2025, the ownership of subject matter jurisdiction cannot be traced.

> This cause coming before the Hon. William Yu pursuant to Jane Girard's January 30, 2025 Notice of Motion set for 10:00 a.m. via zoom, Respondent, Jane Girard, appearing individually and through counsel… Petitioner, Kenton Girard and Third-Party Respondent, Marissa Girard, having receiving [sic] proper notice of today's proceedings, but failing to appear as of approximately 10:40 a.m. either individually or through counsel, the Court **having jurisdiction over the** parties and the **subject matter** (emphasis added)

188. Plaintiff's "Notice as to her Health and TP Claims" filed on February 4 2025 alerted the Cook County Domestic Relations Court to (a) her mandatory 75 day medical leave from the proceedings, owing to the worsening of her interstitial cystitis and PTSD, and as to (b) the fact that her TP Claims were properly before the court, having obtained leave from the previous judicial officer Hon. Fernandez and having filed the same before her time to propound responsive pleadings had tolled.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

189.     Plaintiff's "Notice of Defective Impleading" similarly filed on February 4 2025 alerted the Cook County Domestic Relations Court to the highly irregular circumstances that she had not been supplied with a pleading, despite the continuously repeated and high-pitched protests from Beermann LLP that she was brought into the proceedings as an absolutely indispensable third party thereunder.

190.     As such, the deadline under the domestic relations matter for Plaintiff to craft TP Claims has not yet been tolled and her TP Claims filed in late 2024 are timely under 735 ILCS 5/2-406(b). Furthermore, her TP Claims were granted with leave of court. The TP Defendants, moreover, are indispensable under 735 ILCS 5/2-406(a) and 750 ILCS 5/403(d) to adjudicate the equitable custody relief allegedly sought by Jane F. Girard hereunder. Proving the TP Claims will prove that Jane F. Girard is an unfit mother and belongs in a penal institution, and is an obvious danger to the minor children Gw and Gr.

191.     Under 735 ILCS 5/2-201(a), "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." The recipe here in our state wherein a proceeding starts with the first step of filing a pleading has been universally adopted by the courts throughout our land. For example, in all District Courts, pursuant to Fed. R. Civ. Pr. 3, "A civil action is commenced by filing a complaint with the court."

192.     Such requirement is particularly poignant with respect to Plaintiff, who was not a party to the Girard dissolution of marriage proceedings incepted in 2015. To be specific on or around June 2023, Plaintiff became aware that a summons seeking to join her as a third party respondent was filed with the Cook County clerk on May 26 2023, and further such summons contained language "The Petitioner has filed a legal proceeding against you for one or more of the following: ["Other: Motion to Add Third Party"]. The referenced Motion to Join Third Party

was filed with the clerk on March 8 2023. Some time later, after Plaintiff's erstwhile attorney entered an appearance on her behalf on or around June 2023, she started receiving the first of a series of motions penned by Respondent's attorneys at Beermann LLP seeking to find her in contempt and to fine or jail or otherwise sanction her.

193.     Most memorably, Beermann LLP moved to find Plaintiff in contempt for failing to enforce an unconstitutional First Amendment violating gag order against the minor children Gw and Gr, which order was signed by the disgraced and now-recused Judge William S. Boyd who is now defending allegations that he took bribes from Beermann LLP to render favorable decisions for Jane F. Girard hereunder, under the Bribery Lawsuit.

194.     When Plaintiff's erstwhile attorney (Attorney Pfanenstiel) entered an appearance on Plaintiff's behalf under the Domestic Relations matter, the only paper which had been provided which was directed at her was the summons. The Motion to Join Third Party, as previously explained, specifically does not contain Plaintiff's name in the caption. Moreover, the Motion to Join Third Party – being a request transmitted to the court allow Plaintiff's joinder – cannot possibly be construed as a pleading[18].

195.     For the last ~twenty months, Plaintiff has been trying to discern why Beermann LLP repeatedly insists that her joinder in the domestic relations matter is essential and that she is an indispensable party. Plainly, Plaintiff has yet to receive notice of the claims which lie against her, or to adduce defenses thereto. Simply put, Plaintiff has not been impleaded under the Domestic Relations matter. The action against her has not commenced, irrespective of the pile of vexatious motions for contempt and sanctions which followed her defective joinder. What is

---

[18]     In a lawsuit, formal writing can be divided into two categories: pleadings and motions. A pleading demands that the other party do something, while a motion requests that the judge in the case do something. Given that the Motion to Join Third Party did not even include Plaintiff in the caption, and that it was obviously calculated to obtain court permission to proceed to file a pleading against TP Respondent (which did not happen), this set of circumstances is violative of Plaintiff's fundamental rights to due process and fair notice.

more is the Domestic Relations court is a court of equity, and the likelihood of equitable relief is rapidly eroding toward zero[19] given that the minor children Gw and Gr and nearly of majority age, are high-functioning and high-performing students and entrepreneurs filing their own lawsuit and legal papers. Indeed Gw and Gr already run a multi-million dollar business and await the adjudication of their motion for limited emancipation to sign their own business contracts under Cook County Case No. 2024COMS000016.

196.     Also on or around February 4 2025, Kenton Girard filed a notice as to his own unavailability in the domestic relations matter. Kenton Girard  is an executive for Old National Bank and because of the unnaturally elongated, vexatious, improper and abusive nature of the domestic relations proceedings has been putting off important business obligations which implicate fiduciary duties to tens of thousands of people including *inter alia* shareholders, investors, stakeholders and community interests in the neighborhoods where hundreds of bank branches are located throughout the Midwest. Failure to attend more diligently during each business day to these obligations threatens Kenton Girard's employment at Old National Bank.

197.     Given the current status quo under which the minor children Gw and Gr reside full-time at Kenton Girard's home and Kengton Girard underwrites virtually all of their expenses, and under which Jane F. Girard has entirely stopped contributing her required share under the Joint Parenting Agreement entered in 2015, termination of Mr. Girard's employment would portend a deleterious impact on the well-being and welfare of Gw and Gr.

198.     What makes this situation even more egregious is the fact that the domestic relations matter was dismissed for want of prosecution – as outlined in Kenton Girard's Notice as

---

[19] To put a final nail in the coffin in the theory of adjudicating some sort of matter relating to the Joint Parenting Agreement, Plaintiff has been informed by Gw and Gr's attorney, Toma Makedonski, that a motion to intervene by the minor children Gw and Gr shall be emplaced before the Domestic Relations court in the near future – which will easily carry this case beyond the point at which the minor children Gw and Gr attain majority age.

to Jurisdictional Defects filed on January 29 2025, and as initially noticed in December 2024. Under Ill. S. Ct. R. 273, that dismissal operates as an adjudication on the merits and and therefore the Cook County courts have been divested of all jurisdiction over this matter.

199.    Plaintiff is representing herself pro se in the domestic relations matter and has filed a renewed request for reasonable accommodation under the ambit of Title II of the ADA 5 based on the new and dramatic worsening of her interstitial cystitis and PTSD. Under these circumstances, Plaintiff will clearly require above-normal time to prepare responsive pleadings and opposition briefs.

Plaintiff requests the removal of Judge Yu for cause.

200.    On February 11 2025, Plaintiff filed a petition seeking substitution of Judge William Yu for cause, wherein she set forth the following argument in support of the same.

I.    Ignoring TP Respondent's health notice shows favoritism for Beermann LLP.

On February 4 2025, TP Respondent filed her Notice as to her Health Status and TP Claims. The Notice expounds on the recent worsening of TP Respondent's health condition, under which she suffers from interstitial cystitis and PTSD, both of which are specifically recognized disabilities under the ambit of the Americans with Disabilities Act. On the strict orders of her doctor, TP Respondent is to observe a 75 day period of quiet under which she is medically unable to participate in these proceedings. Moreover, even prior to Judge Yu's arrival hereunder, Cook County has been formally warned that its vexatious refusal to reasonably accommodate TP Respondent under the ADA will not be tolerated, as per the litigation under Marissa Girard v. Rossana P. Fernandez et al., Civil Action No: 1:25-cv-00136, N. Dist. Illinois.

In the court date on February 7 2025, not only did Judge Yu proceed to conduct a hearing and rule on a stack of motions penned by Attorney Matthew D. Elster of Beermann LLP, but he did so in ostentatious disregard for TP Respondent's inability to attend the same and in violation of Cook County Rule 2.1(d) and basic due process requirements wherein TP Respondent was not allowed to prepare briefs in opposition. Such violations of TP Respondent's rights are all the more serious given that she must reasonably be allowed additional time to prepare opposition papers and cannot prepare more than a single motion per court date.

The Notice additionally sets forth that TP Respondent's TP Claims are properly before the Court because they were filed strictly within the timeline set forth under 735 ILCS 5/2-406(b) and furthermore leave of court was granted by Hon. Fernandez. Moreover the TP Defendants are indispensable under 735 ILCS 5/2-406(a) and 750 ILCS 5/403(d) because the fact of Respondent Jane F. Girard being a pattern criminal is relevant before a court order of custody is entered against her sex abuse victims, the minor children Gw and Gr.

Notwithstanding these circumstances, Judge Yu took the profoundly irresponsible action of striking the TP Claims. It is well settled that striking claims is an extreme remedy, and it is to be a last

resort to punish a previously sanctioned litigant. Here, there has been no finding of sanctions against TP Respondent in this litigation and moreover her TP Claims were brought properly from every point of view, including as arising under a common nucleus of facts. Moreover, just like any penal finding such as imposition of Rule 137 sanctions, a striking of claims must be based upon a precedent written finding, which the Court has not yet propounded.

II.    Judge Yu has blessed TP Respondent's deficient joinder.

On February 4 2025, TP Respondent also filed her Notice of Defective Impleading, which details the circumstances of her improper joinder hereunder. In summary, under 735 ILCS 5/2-201(a), "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." It is furthermore a well established right to due process that a defendant be provided with adequate notice of the claims which lie against her. Otherwise, the defenses cannot be adduced and the proceedings which follow lack a legal foundation.

TP Respondent was not a party to the domestic relations proceedings hereunder, which were incepted in 2015. The papers filed with the Court under which Beermann LLP commandeered TP Respondent's joinder consisted in a summons and a "Motion to Join Third Party". The latter did not include TP Respondent in the caption, indeed sought action from the Court not an answer from TP Respondent and therefore does not conceivably constitute a pleading. To make matters even more questionable, it is highly irregular and extremely unusual to implead, as here, the new wife of a party to domestic relations proceedings wherein she is neither a biological parent nor the holder of any parental rights to the minor children.

In spite of such epic circumstances, TP Respondent has been on the receiving end of a myriad of sham papers filed by Beermann LLP including not less than (6) motions asking the court to jail her or otherwise to hold her in contempt. The situation with respect to TP Respondent is akin to a Cook County Jail detainee being subjected to the indignity of being confined for eighteen (18) months, getting physically abused by other inmates all the while, without having been charged with a crime.

Notwithstanding these circumstances of which he was made explicitly aware via the Notice, Judge Yu has approved TP Respondent's fatally defective joinder hereunder by proceeding to rule on a stack of ill-founded motions by Matthew D. Elster of Beermann LLP. At a minimum when Judge Yu was apprised of these show-stopping deficiencies, he should have paused the proceedings. Instead, after the court date of February 7 2025, Judge Yu set another court date for a fast track of just one week later on February 14 2025.

If there were any doubt about Judge Yu's external coaching by Beermann LLP or their proxies, he also completely disregarded the show-stopping fact that judicial transfers between Calendar 1 to Calendar 51 from January 14 and January 23 2025 are missing and unfiled on the docket (therefore subject matter jurisdiction for Calendar 89 remains in question).

III.    Judge Yu has moreover disregarded the ADA accommodation request.

The fact that the February 7 2025 hearing took place at all lies in offense against the stay of proceedings governing the matter at the current time, wherein TP Respondent propounded a formal updated request for reasonable accommodations under the ADA to CDC Elena Demos a few days prior on February 4 2025. Under that request, TP Respondent specifically demanded a stay of these proceedings until such time as she would be reasonably accommodated under the ADA. On Cook County's side, CDC Elena Demos handed off the task to CDC Carina Segalini. The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that he is taking orders from Beermann LLP or from Hon. Scannicchio, who is reputed to be "owned" by Beermann LLP and reputed Chicago Outfit "capo" John M. D'Arco Esq.

Moreover, the right to attend judicial proceedings is a well-established right protected by the First

Amendment and the grotesque violation of this right of Marissa Girard by Judge Yu signals the depravity of his impermissible bias against her.

201.     Judge Yu now faces a reckoning because by commanding the bench – in sheer absence of jurisdiction – he eviscerated his protective cloak of judicial immunity. He now is in good company with Hon. William S. Boyd and Hon. Renee G. Goldfarb and Hon. Fernandez – all of whom recused themselves from these proceedings, for allegations of taking bribes from Beermann LLP to rule favorably for Respondent and sex abuser Jane F. Girard or for violating the constitutional rights of Plaintiff with impunity.

<u>Attorney Elster belittles Plaintiff's medical conditions in legal papers.</u>

202.     In his opposition paper filed on February 12 2025 to Plaintiff's recently filed request for removal for cause directed at Judge Yu, Attorney Elster writes at p. 1 that "[Plaintiff] refuse[s] to appear or participate in the proceedings when it does not suit [her]". He goes on to aggressively assert at p. 1, n. 1 "Marissa has claimed her physician has prohibited her from participating in this litigation for a minimum of 75 days and for no more than 30 minutes at a time. [She has not] supported [her] claims with a shred of documentation." This initial outburst of anger is disturbing and misplaced because Plaintiff has carefully and diligently corresponded not only with the Court and opposing counsel (including Attorney Elster) but also on numerous occasions with the Cook County court disability coordinators (including without limitation Elena Demos and Vincent Waller) and additionally she has repaired to this District Court to seek relief from the trampling of her rights under the ADA. Moreover, Plaintiff has offered to provide the Domestic Relations Court with a copy of her medical file, including her doctor's recent command to observe a period of quiet for seventy-five (75) days, however the Court has refused to enter a protective order or otherwise seal Plaintiff's highly confidential medical records in

accordance with the requirements under the Health Insurance Portability and Accountability Act of 1996.

203.    Next, Attorney Elster describes Plaintiff at p. 2 as an "unscrupulous litigant abusing the provision of section 2-1001(a)(3)", wherein he takes direct aim at the substance of Plaintiff's recently filed petition for substitution of judge for cause directed at Judge Yu. Reviewing the substance of that petition, the primary argument advanced is that Judge Yu's deliberate refusal to provide any reasonable accommodation[20] – much less to allow a period of quiet for Plaintiff in the domestic relations proceedings – proves his unreasonable favoritism of Beermann LLP.

204.    Continuing, Attorney Elster takes aim at Plaintiff's pleadings in the domestic relations matter, referencing "Marissa's improper subpoenas/third-party complaints" at pp. 3-4. In the same breath he defends having "properly noticed up several motions before [the Domestic Relations Court] on February 7, 2025 at 10:00 a.m., providing both Kenton and Marissa **with proper and ample notice** … **[per] her supposed doctor's orders**" (emphasis supplied). In reality, a raft of notices of various motions to quash and to strike Plaintiff's claims were supplied to Plaintiff on February 6 2025, less than 24 hours prior to the hearing set for February 7 2025 by Judge Yu. Under Cook County rules, notices for presentment of motions must be tendered *at least two court days prior* to presentment. As always with Attorney Elster, there is one amorphous self-serving set of rules which binds his clientele and Beermann LLP, while there is a wholly different and inexplicably disfavorable set of rules for his opposing parties.

205.    Plaintiff's paper seeking the replacement for cause as to Judge Yu moreover

---

[20] Indeed, Plaintiff propounded a formal updated request for reasonable accommodations under the ADA to Cook County Courtroom Disability Coordinator ("CDC") Elena Demos a few days prior on February 4 2025. Under that request, Plaintiff specifically demanded a stay of the domestic relations proceedings until such time as she would be reasonably accommodated under the ADA. On Cook County's side, CDC Elena Demos handed off the task to CDC Carina Segalini who has yet to provide any help whatsoever to Plaintiff.

points directly at an extrajudicial source animating his bias: "If there were any doubt about Judge Yu's **external coaching by Beermann LLP or their proxies**, he also completely disregarded the show-stopping fact that judicial transfers between Calendar 1 to Calendar 51 from January 14 and January 23 2025 are missing and unfiled on the docket (therefore subject matter jurisdiction for Calendar 89 remains in question) … The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that **he is taking orders from Beermann LLP or from Hon. Scannicchio**, who is reputed to be 'owned' by Beermann LLP and reputed Chicago Outfit 'capo' John M. D'Arco Esq." (emphasis added)

206.    Moving on, Attorney Elster at p. 8 states "Marissa's lack of good faith is also impossible to ignore. She does not even attempt to satisfy the legal requirements for SOJ petitions but, instead, resorts to sensational accusations of corruption coupled with **unsubstantiated disability claims**." (emphasis added) Continuing at p. 10, Attorney Elster further writes "this Court need not—and should not—allow Marissa to further delay these proceedings through unscrupulous litigation tactics." Continuing, Attorney Elster writes "This is the second time in approximately one month that Marissa **has leveled false accusations against members of the bench and bar** in an effort to remove a sitting judge from her case… Marissa has resorted to her tried and true tactic of accusing this Court and Jane's attorneys of outright corruption." (emphasis supplied)

207.    In sum, Attorney Elster defames Plaintiff as not acting in good faith, as exercising improper litigation tactics, of advancing claims not grounded in fact. He does not even attempt to substantiate his character assassination of Plaintiff. Apparently, in Attorney Elster's world, the mere fact that Plaintiff is the opposing party in the domestic relations matter is enough to launch such an extreme ad hominem offensive against her. Or perhaps he is simply a misogynist.

Whatever the basis, his unfounded invective against Plaintiff must be disregarded by the Court.

The February 14 2025 court date presided by Judge Yu is a farce.

208.     During the February 14 2025 court date, Kenton Girard several times raised attention to the jurisdictional defects of the domestic relations matter. He points out the transfers between Calendars 1 and 51 from January 14 2025 and January 23 2025 which were not reduced to a writing, much less filed on the docket. Thereby, Mr. Girard pointed out there is currently no way to trace Calendar 89's jurisdiction over the domestic relations matter. Judge Yu's response is to simply say he'll "deal with" jurisdictional issues later.

209.     Disturbingly, Judge Yu appears to be of a single mind to move the matter to trial as quickly as possible. Attorney Robert Holstein – representing Plaintiff in the domestic relations matter for the limited scope of the SOJ for cause petition – points out there are no triable issues of fact, and Mr. Girard raises attention to the complete absence of pleadings in the post-decree proceeding. In spite of the same, Judge Yu set trial dates on May 1-2 2025 – leaving significant outcome-determinative issues hanging in the wind.

210.     Kenton Girard furthermore brings attention to the Dismissal for Want of Prosecution which he filed in December 2024 – without any opposition whatsoever from Beermann LLP or Jane F. Girard. Judge Yu simply remarks he is not interested in "getting involved" in that issue.

211.     As if the foregoing were not sufficiently alarming, Judge Yu appears furthermore committed to unequal treatment of the parties. Thereunder, he gives significant latitude to Beermann LLP attorneys, quickly accepting their characterizations in all instances wholly without critical examination. Judge Yu furthermore repeatedly cuts off Kenton Girard in the middle of and cuts off Kenton's explanations multiple times. In the same vein, he repeatedly

allows Beermann LLP attorney Enrico J. Mirabelli to make inflammatory statements and ad hominem attacks against Kenton Girard – in all instances without laying foundation for the same.

212.    As to the pending petition seeking Judge Yu's removal for cause, Judge Yu treats such filing without a thorough examination or the requisite due care. He allows a comically short window (until 5 PM that very day) for Kenton Girard to amend or join the same, declares that no further requests seekings his recusal will be allowed after such time (even if, as Kenton Girard pointed out in open court, Judge Yu were to engage in additional for cause behavior) and he seems clearly predisposed to deny the same rather than set it for a fair and just hearing.

213.    Moreover, the attitudes expressed with respect to the minor children Gw and Gr are alarming to say the very least. Judge Yu allows Attorney Mirabelli to dispute the children's ages without substantive investigation and he seems obviously more concerned with moving the case forward than understanding the children's situation. Such lax posture towards the voice and interests of the children also invokes procedural integrity concerns. Attorney Mirabelli falsely informs Judge Yu in open court that the minor children Gw and Gr *fired their guardian ad litem* – when in reality the GAL Vanessa Hammer sought court approval to resign from her appointment under the domestic relations proceedings in Summer 2023. Notwithstanding Mr. Mirabelli's blatantly false statement to the court, Judge Yu does not even attempt to explore the irregularity that the children would not have a voice in the domestic relations matter[21].

214.    It appears as if the unfounded story promoted by Beermann LLP that Kenton Girard and Plaintiff – and the minor children Gw and Gr – are engaged in bad faith litigation tactics at every turn. Such landscape is poignantly counterfactual especially given that Jane F. Girard is an admitted child sex abuser transparently hijacking the post-decree proceedings as a

---

[21] Incidentally the child representative Joel J. Levin also resigned from the proceedings in Summer 2024. The backdrop of the Custody Proceedings is truly frightening, given that the interests of the minor children are statutorily paramount in family court in our state, and throughout our land.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

pretext to confine, starve and rape the minor children Gw and Gr again. Moreover, she has joined Plaintiff improperly WITHOUT A PLEADING for the sole purpose of harassment.

215.    Finally, Judge Yu also denigrates the Plaintiff's medical conditions, under which she cannot participate in any court dates in person by specifically ordering in person attendance for Plaintiff at the May 1-2 2025 trial date in the domestic relations matter.

216.    No substantive discussion of Plaintiff's documented and ADA-qualifying medical conditions took place during the February 14 2025 court date. Judge Yu completely avoided discussion of Plaintiff's needs and measures which might be required to ensure that Plaintiff has a voice in the proceedings. The mere fact by which Judge Yu set an early trial date – conflicting with Plaintiff's doctor-ordered 75 days period of quiet – indicates his sheer disregard for both the medical needs of Plaintiff and moreover his contempt for federal law.

Plaintiff's Attorney Robert Holstein is also trampled by Judge Yu.

217.    Several times during the course of the February 14 2025 court date, Plaintiff's attorney in the domestic relations matter Robert Holstein alludes to the instant suit before this District Court. Judge Yu directs Attorney Holstein away from discussion of the same, literally saying "I don't need to hear that." In other instances, Judge Yu simply over-talked Attorney Holstein and forestalled discussion of the instant suit.

218.    Astonishingly, Attorney Elster at one point describes the instant suit as "blatantly untrue" and in a manner which provides insight into the manner in which he is merely following orders from his paymasters at Beermann LLP, Judge Yu does not entertain – indeed refuses to entertain – any substantive discussion about these issues. At most, near the conclusion of the court date and upon questioning from Attorney Elster whether the May 1-2 2025 trial date was a hard date, Judge Yu indicated that such trial date might not come to pass in case of an "ADA

excusal". Clearly, Judge Yu views ADA accommodation as some sort of an exception to be granted, not a right which must be respected.

219.     Attorney Holstein elsewhere complains there are no triable facts upon which to convene a trial, and furthermore Judge Yu gives no indication about the substance of the mystery May 1-2 2025 trial. Judge Yu shuts down Attorney Holstein's line of questioning under the theory that Attorney Holstein's appearance was limited in scope. Even under a limited scope, the issue of forcing Plaintiff to "stand trial" without a pleading having been served upon her is certainly probative for the purpose of determining whether Judge Yu is animated by an impermissible bias against Plaintiff. On the other side of the coin, forcing a person who is suffering from two ADA-qualifiying disabilities (interstitial cystitis and PTSD) to sit for a trial which should be off the docket places on display Judge Yu's contempt for Plaintiff.

The "mystery trial" is to proceed without any pleadings.

220.     During the course of the February 14 2025 court date under the domestic relations proceeding Beermann LLP Attorneys Elster and Mirabelli were extremely ambiguous about what the purpose of their requested "mystery trial" would be. On the one hand, Attorney Mirabelli upon responding to Mr. Girard's grievance that there are no pleadings in the post-decree proceeding, decried Kenton Girard is repeatedly trafficking in falsehoods "without compunction." He offered that at least "three motions" had been filed. The problem with this explanation by Attorney Mirabelli is that a motion is not a pleading.

221.     For his part, Attorney Enrico J. Mirabelli presented quite a strange vision for the trial in the domestic relations matter, stating:

> "Mr. Girard has not identified any witnesses thus far. He has filed no counter-petitions, no counter-motions thus far, so I don't know what his defense is going to be or how long his case is going to be. He hasn't sat for his deposition, as he told you in one of his motions, so I don't know -- I can't predict. **All I can tell you is our case will be very streamlined to make a prima fascia**

> **case for petition for rule to show cause[22].** Then the burden will shift to Mr. and Mrs. Girard. I don't know how long their case would take .. So if you set aside one day for us, I think we're going to complete our case in chief easily within one day." (emphasis added)

There are, of course, many serious problems with Attorney Mirabelli's vision for the "mystery trial". Setting aside the agenda for the "mystery trial", due process elements are utterly lacking.

222. In a subsequent exchange with Judge William Yu, Attorney Elster refers to a case management order signed by a previously recused judicial officer, Hon. Fernandez. Of course, among other items that case management order stipulated dismissal for want of prosecution and a February trial. None of those items survived her recusal of course.

Plaintiff files a notice as to the ongoing constitutional violations.

223. Hons. Scannicchio was put on notice as to the ongoing constitutional violations taking place under the domestic relations proceeding, wherein Plaintiff transmitted a letter complaining of the same on February 20 2025. In the opening, Plaintiff cautions that no court dates can take place hereunder until a) jurisdictional issues are resolved, and b) the medical treatment schedule for Plaintiff has run its course, and c) Kenton Girard makes good on his neglected work obligations at Old National Bank in early May 2025.

224. Continuing, Plaintiff enumerates the procedural and jurisdictional quagmires which beset the domestic relations matter:

    **a**.    The domestic relations proceedings were terminated under "Dismissal for Want of Prosecution", as memorialized per an uncontested notice filed on December 20 2024.
    **b**.    Such a termination constitutes a ruling on the merits under Ill. S. Ct. R. 273.
    **c**.    Respondent Jane F. Girard divested herself of a right to a custody remedy wherein she asserted her Fifth Amendment right against self-incrimination under exam and questioning as to her long history of sexual abuse and rape as to the minor children Gw and Grby State's Attorney Mary Stein in late Summer 2023.

---

[22] A **Rule to Show Cause** in Illinois is a process where a) a person brings another person's failure to obey a court order to the attention of the court; b) the court can punish the person who failed to follow the order by jailing them, making them pay attorney fees, or modifying the court order; and c) the petitioner must provide proof that the judgment or order has not been followed, and the respondent can challenge the evidence.

     *Marissa Girard v. Rossana P. Fernandez et al. – FAC*

**d**.      On ~ January 14 2025 this matter was transferred from Calendar 1 to Calendar 51, wherein numerous contemporaneous court filings bore the Calendar 51 stamp. On ~ January 23 2025, this matter was transferred from Calendar 51 to Calendar 1. However, neither of these judicial orders were produced, much less filed on the docket. Because subject matter jurisdiction cannot be waived, these transfer orders must be located. Until such time, any purported subsequent judicial transfer (including to Calendar 89, under Judge William Yu) is legal fiction.

**e**.      In early February 2025, before any court dates were convened by Judge Yu, Plaintiff formally requested accommodations under the ADA wherein the court (a) would respect her 75 day medical leave, (b) allow all future court participation via Zoom, (c) accord her at least 35 days to prepare opposition briefs to all motions, (d) limit court dates to presentment of a single motion, (e) stagger court dates appropriately to allow Plaintiff sufficient time to prepare and decompress between, and importantly (f) limit court dates to 30 minutes in duration.

**f**.      Under Cook County rules, Marissa demanded a stay of these proceedings until Full resolution of her ADA request for accommodation and any appeal thereunder.

**g**.      Per the proposed order from February 14 2025 – which to our knowledge has not been signed or approved by Judge Yu – Beermann LLP attorney Matthew D. Elster has DRAMATICALLY REDUCED the scope of the trial he would like to put on hereunder. Notably, those motions seem to constitute ONLY motions for contempt or represented moot filings, because Jane F. Girard has been divested of her right to seek a custody remedy as aforedescribed.

**h**.      Incidentally, Marissa Girard has NOT been actioned with a pleading hereunder. She is in the civil analogy of a Cook County Jail detainee who has been rotting in confinement, assaulted by other detainees, without a charging bill having been filed. As a result, before any trial takes place hereunder, she must be impleaded, given appropriate time to prepare responsive pleadings, an opportunity to prepare a motion to dismiss and full hearing thereunder. Giving Respondent Jane F. Girard appropriate time to respond would easily require until on or around September 1 2025 for making it through those to-be-filed pleadings, based on the 75 day medical leave which currently prevents Marissa from engagement hereunder.

**i**.      The TP Claims of Marissa Girard were filed with leave of previous judicial officer Hon. Fernandez and were timely based on the fact that she has NOT YET been impleaded hereunder. Therefore not only was the fact of Judge Yu's convening of two separate court dates outrageous and ADA violating, but also his striking of her TP Claims is an extraordinary and extreme remedy wholly without justification. These proceedings are INEXTRICABLY INTERTWINED with the TP Claims, which must be therefore un-stricken forthwith.

**j**.      Kenton Girard's federal suit *Girard v. Village of Glencoe et al.*, Civil Action No. 24-cv-06882 continues to march forward. Beermann LLP is accused of running a racket in the family law court in the Domestic Relations Division wherein they own and control Hon. Scannicchio and therefore the outcomes in their clients' proceedings. Under the basic principle of federal preemption, violation of federal law is MORE IMPORTANT than violation of state law. The pause button therefore remains depressed in this Domestic Relations case.

A trial cannot take place without pleadings.

225.    Pleadings are the foundation of the litigation process, setting the stage for the trial by outlining the respective claims and defenses of the parties involved. The primary purpose of pleadings is to clearly define the issues in contention, enabling the court to adjudicate effectively.

226.    A pleading is defined as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." BLACK'S LAW DICTIONARY 1270 (9th ed. 2009).

227.    The Illinois Code of Civil Procedure (Code) requires pleadings to "contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." 735 ILL. COMP. STAT. 5/2-603(a) (2012). Illinois is a fact-pleading jurisdiction. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006); *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, 26, 965 N.E.2d 1092, 1099; *Johnson v. Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1105 (Ill. App. Ct. 2004). Federal courts permit notice pleading, which is a lower standard. Under this standard, the pleader is required to set forth and allege facts that support his or her cause of action, i.e., those facts necessary for recovery pursuant to a legally recognized cause of action. *Marshall*, 856 N.E.2d at 1053; Johnson, 820 N.E.2d at 1105.

228.    A complaint is not required to set out the evidentiary facts tending to prove ultimate facts; however, it is required to allege the ultimate facts to be proved. *Chandler v. Ill. Cent. R.R. Co.*, 798 N.E.2d 724, 733 (Ill. 2003). Section 2-603(c) of the Code states, "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILL. COMP. STAT. 5/2-603(c) (2012). Section 2-612 of the Code specifies that a pleading is not substantively defective if it "contains such information [that] reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILL.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

COMP. STAT. 5/2-612(b) (2012).

229.    By contrast, Black's Law Dictionary defines a "motion" as "[a] written or oral application requesting a court to make a specified ruling or order." BLACK'S LAW DICTIONARY 1106 (9th ed. 2009); see also *Blazyk v. Daman Express, Inc.*, 940 N.E.2d 796, 799 (Ill. App. Ct. 2010) (defining motion as "'an application to the court for a ruling or an order in a pending case'" (quoting *In re Marriage of Wolff*, 822 N.E.2d 596, 601 (Ill. App. Ct. 2005))).

<u>The Sixth Amendment has been violated.</u>

230.    A party is in contempt of court when he or she willfully violates an order of the court. *In re Marriage of Hartian*, 222 Ill. App. 3d 566 (1991). The party that fails to comply with a judgment bears the burden of proving that compelling cause or justification for the noncompliance exists. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 484 (1999).

231.    According to the order prepared by Beermann LLP and signed by Judge William Yu on February 7 2025, the pleadings for the May 1-2 2025 trial consist in:

1.  Jane's May 25 2022 Motion to Appoint Parenting Coordinator.
2.  Jane's Aug 31 2022 Motion for Reunification Therapy.
3.  Jane's Sep 20 2022 Petition for finding of parenting time abuse directed at Kenton and Marissa.
4.  Kenton's July 11 2023 Motion to modify JPA and custody (to allow the minor children Gw and Gr to have custody of their own passports).
5.  Jane's July 13 2023 Motion to enforce JPA.
6.  Janue's Mar 13 2024 Motion to Implement the 604.10(b) report.

232.    Of particular note, the paper listed under line item (3) does not exist. Even if there were such a paper, it could not possibly implicate Plaintiff because she is not a party to any Joint Parenting Agreement and the date in question preceded her joinder by nearly a year.

233.    Neither do any of these papers seek a finding against Plaintiff, or otherwise seek relief from Plaintiff. As such the order prepared by Beermann LLP pursuant to the February 14

2025 court date before Judge William Yu confirms with certainty that Plaintiff is not participating in the May 1-2 2025 trial as a party in any way. Whether she is on the witness list is unknown. Kenton Girard has certainly not identified Plaintiff as a witness for the forthcoming trial, and neither has Jane F. Girard via her counsel at Beermann LLP.

234.    The order signed on February 14 2025 makes it plain that Plaintiff has no role to play in the upcoming evidentiary hearing. However, according to the testimony of Beermann LLP Attorney Enrico J. Mirabelli, the trial is calculated *to seek a finding of criminal contempt against both Kenton Girard and Plaintiff.*  Plaintiff's constitutional right to fair notice of the claims which lie against her has been violated. Moreover, under Enrico J. Mirabelli's re-casting of the trial as a *criminal contempt proceeding*, Plaintiff's Sixth Amendment rights are also being violated. Such constitutes an outrageous state of affairs and cannot be allowed to stand. Attorney Mirabelli does not get to whimsically alter the agenda for the trial. And he certainly is not a state prosecutor vested with the authority to act on behalf of the State of Illinois to bring criminal charges against Plaintiff.

235.    What is further troubling is that, pursuant to the February 14 2025 court date, Judge William Yu is content to rely on the case management order of now-recused Hon. Fernandez, dating from October 18 2024 and as amended on December 2 2024. That order references a five-day trial and identifies a much wider range of "topics", which are not overlapping with the new trial plan ordered by Judge Yu on February 14 2024.

236.    At this point in time, the "mystery trial" scope has freakishly shapeshifted. The domestic relations proceedings have been without a judicial officer – and therefore legally halted, with no one to referee the proceedings – **from November 2024 through February 2025** because of the pendency of the request for removal for cause directed to and the ultimate recusal

by Hon. Fernandez. To credit Hon. Fernandez's case management order of October 18 2024 with full force and effect would be to deny Plaintiff her constitutional rights to prepare for the "mystery trial" including propounding written discovery, issuing subpoenas, taking depositions, making prudential decisions about necessary witnesses and experts, and so forth.

237.    Plaintiff has been ordered to stand for a criminal trial – **in person**, and therefore in a calculated affront to her need for reasonable accommodations under the ADA – under a proceeding in which neither findings are levied against her nor relief is requested from her. As of this time, Plaintiff has not even been identified as a prospective witness for the "mystery trial". Suffice to say, Plaintiff's defective and unconstitutional joinder as a party in the domestic relations matter – especially in light of her established and serious ADA qualifying medical conditions – was done for an improper purpose, namely harassment. The fact that Plaintiff has been subjected to numerous motions to fine and jail her in the course of approximately twenty (20) months, seeking to improperly hold her accountable under a Joint Parenting Agreement to which she is not a party, all the while having been defectively joined in the domestic relations matter, is beyond a travesty.

238.    And now, per the February 14 2025, the scope of the "mystery trial" has morphed yet again, from the previously identified court filings (one of which does not exist) to – in the words of Beermann LLP Attorney Enrico J. Mirabelli – a contempt trial against Kenton Girard and Plaintiff. As previously analyzed, such pursuit of contempt at this late stage wherein the minor children Gw and Gr are closer than ever to attaining majority age cannot possibly be construed as coercive, but rather must be called for what it is: punitive.

239.    For sake of clarity, the minor children Gw and Gr, who are fraternal twins, are seventeen years of age, straight A honor roll students, varsity swimmers at New Trier High

School, run a multi-million dollar small jewelry business White Lemon Creations, and their junior year term papers recently submitted – complete with citations to law review articles – consist in a treatment of the abuses in the "pay to play" family court system including *inter alia* forced participation in "reunification" camps such as those recommended by their corrupt and disreputable Custody Evaluator Phyllis Amabile[23] under the domestic relations matter.

240.    The minor children Gw and Gr have penned multiple of their own legal motions in the domestic relations matter, under which their interests are not represented by a guardian ad litem since Vanessa Hammer received court approval in the to discontinue serving in such capacity in Summer 2023. Gw and Gr appear regularly on podcasts concerning family court reform across the country. They have been pursuing a lawsuit against Beermann LLP, two Cook County judicial officers accused of taking bribes in exchange for favorable rulings for their biological mother and admitted sex abuser Jane F. Girard, and several of the family court functionaries who have harmed their interests under the Bribery Lawsuit, which has been pending before District Judge Pallmeyer since August 2024.

241.    Therefore the problems besetting the "mystery trial" are beyond enumeration. For starters, criminal contempt cannot be initiated by a private party — for a defendant to receive adequate notice of the charge, due process requires that criminal contempt be initiated by the court and not by a private party. The prosecutor's office must be engaged in all steps of the process, from investigation to the preparation of a bill of charges or indictment, to the convening of pre-trial hearing and the ultimate trial.

242.    At this stage, moreover, the Court has yet to issue a "Show Cause" order[24],

---

[23] Attorney Toma Makedonski, on behalf of the minor children Gw and Gr, has signaled his intention to seek injunctive relief against Phyllis Amabile and to initiate a criminal investigation via the Office of the United State Attorney General.

[24] It also goes without saying in the context of a criminal proceeding, an order to a criminal defendant to appear in court to face questioning and to be present before the fact finder, under a hearing

although according to Attorney Enrico J. Mirabelli, the court order from February 14 2025 setting a trial for May 1-2 2025 is just that. Furthermore, because the contempt sought concerns alleged violations of the Joint Parenting Agreement – to which Judge William Yu is not a direct witness – a full jury must be empaneled[25], a true bill of charges or an indictment must be adduced and signed off by the Cook County Prosecutor's Office, and lest we forget, Judge William Yu is not a criminal judge and the matter would necessarily have to move to a criminal court.

243.    Plaintiff propounded a petition for substitution for cause directed at Judge William Yu. In turn, Judge Yu transferred the proceedings back to Calendar 1 for hearing under that matter, in accordance with 735 ILCS 5/2-1001(a)(3). However, not in keeping with statute, Judge Yu proceeded to convene another court date on February 25 2025 when the proceedings were already demonstrably transferred to Calendar 1, per Judge Yu's own signed order.

244.    Acting as Judge Yu's de facto "enabler", Attorney Matthew D. Elster goaded Plaintiff to join said court date and sent a number of missives to her and Kenton Girard while Judge Yu apparently "awaited" their joining the proscribed court date on Calendar 89. Later in that day, Plaintiff and Kenton Girard jointly penned a "Notice of Jurisdictional Trespass" warning Judge Yu from (a) convening any court dates on Calendar 89 prior to the adjudication of the pending petition seeking his removal for cause, and (b) issuing any directives or signing any court orders in relation to same.

245.    Duly warned, as of the date of this filing, Judge Yu has not dared sign a proposed order penned by Attorney Matthew D. Elster, under which another court date would be set in

---

in which his or her liberty is at stake requires form orders bearing the official seal of the state. Such orders for criminal process must be prepared by a prosecutor, not by a private attorney as here.
    [25] Summary proceedings under a contempt charge wherein the judge acts as the fact finder are constitutionally sound only wherein the judge is a direct witness to the alleged contempt. The instant scenario is a classic "indirect criminal contempt" setup, because the judge does not have direct firsthand knowledge of whether the Joint Parenting Agreement is being followed by the parties bound thereunder.

mid-March in order for Judge Yu to rule on a stack of pending, unresolved motions from Beermann LLP.

### COUNT I - VIOLATION OF FIRST AMENDMENT
*42 U.S.C. § 1983*; *Fernandez, Scannicchio, Ahern*

246.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

247.    Defendants, acting under color of state law, deprived Plaintiff of her rights under the First Amendment to the United States Constitution by denying her admission to a public court proceeding on October 18 2024.

248.    Defendants' refusal to admit Plaintiff to the October 18 2024 proceedings violated a well-established First Amendment right, the right to attend public court proceedings, and therefore Defendants are not entitled to qualified immunity.

249.    Defendants' refusal to admit Plaintiff to the October 18 2024 proceeding is not subject to judicial immunity because, inter alia, it was an administrative determination and not part of any judicial proceeding.

### COUNT II - VIOLATION OF RIGHT TO IMPARTIAL PROCEEDINGS
*42 U.S.C. § 1983*; *Fernandez, Scannicchio, Ahern, Yu*

250.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

251.    By accepting bribes to render specifically requested favorable decisions to Beermann LLP clients, Defendants Scannicchio and Ahern cannot claim judicial immunity here.

252.    In 1927, the Supreme Court addressed a claimed violation of the right to an impartial judge. *Tumey v. Ohio*, 273 U.S. 510 (1927) involved a challenge to a conviction in a municipal court in which the mayor presided as the judge, for violation of the state's prohibition law, which resulted in a fine, a fraction of which was allocated to the mayor "in addition to his regular salary." *Tumey*, 273 U.S. at 518–19. The Court held that this improper financial motive violated the defendant's right to an impartial judge.

253.     With Defendants Scannicchio and Ahern both on the payroll of Beermann LLP, the proceedings are not impartial. Wherein Hon. Fernandez has propounded numerous orders and rulings *in the period since she divested herself of jurisdiction over the Custody Proceedings on October 18 2024*, the proceedings under her are neither impartial.

254.     Plaintiff has suffered injuries, damages and losses as a result of the violation of and interference with Plaintiff's constitutionally protected right to an impartial judge including numerous adverse decisions which would not have been rendered by a fair, impartial judge.

### COUNT III - VIOLATION OF TITLE II of ADA
*42 U.S.C. § 1983*; *All Defendants except Jane F. Girard*

255.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

256.     Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disabilities which are specifically recognized under the ADAAA of 2008.

257.     The ADA Title II prohibits disability discrimination by all public entities at the local level, e.g., school district, municipal, city, or county, and at state level.

258.     Under 42 U.S.C. § 12132, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

259.     Defendants' conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA as well as a willful and reckless disregard of Plaintiff's protected rights in violation of implementing regulation 28 C.F.R. Part 35. Plaintiff's repeated and consistent requests for Zoom access to the legal proceedings were not an undue burden on Defendants, yet Defendants intentionally refused to accommodate Plaintiff's disabilities.

260.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of earnings, loss of income, mental anguish, distress, physical and debilitating symptoms of PTSD and interstitial cystitis, humiliation, and loss of enjoyment of life.

### COUNT IV - VIOLATION OF THE REHABILITATION ACT OF 1973
*42 U.S.C. § 1983*; *All Defendants except Jane F. Girard*

261.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

262.    The Rehabilitation Act of 1973 and its implementing regulations require that no qualified individual, solely by reason of her actual or perceived disability, be subjected to discrimination under any program or activity receiving Federal financial assistance. 41 C.F.R. § 60-741.2(o)(1); 45 C.F.R. § 84.3(j)(2)(i).

263.    The Domestic Relations Division of the Cook County Courts receives federal grant funds to assist access to the courts by all persons. Defendants' inexplicable and cruel denial of Zoom access to Plaintiff places them in the crosshairs of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulation for recipients of federal funding.

### COUNT V - VIOLATION OF SIXTH AMENDMENT
*42 U.S.C. § 1983*; *Scannicchio, Yu, Mirabelli, Elster*

264.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

265.    Attorneys Mirabelli and Elster, as officers of the court and custodians of the post-decree Custody Proceedings which they incepted on behalf of Jane F. Girard, bear responsibility for taking action under color of state law to force Judge Yu to set the "mystery trial" – lacking pleadings altogether – to be held May 1-2, 2025.

266.    Attorneys Mirabelli and Elster – as veteran attorneys and experienced practitioners in the Domestic Relations Division – know better than to force Judge Yu to set a criminal proceeding against Plaintiff without pleadings, without a charging instrument, without

the participation of the prosecutor's office and so forth. They plainly took advantage of their posture (likely due to bribery, per the Bribery Lawsuit) before the Domestic Relations Division in which judges merely do their bidding, the Constitution be damned, in order to knowingly harass Plaintiff and improperly leverage her resulting pain and suffering in a perverse attempt to achieve a favorable result for their client, admitted child sex abuser Jane F. Girard.

267.   Judge Yu, for going along with the grotesque charade and knowingly setting a trial lacking a pleading, a trial which seeks imposition of contempt and is criminal in nature, is responsible for disregarding the Sixth Amendment rights of Plaintiff. Because he set the "mystery trial" via his courtroom in Calendar 89, fully apprised that previous judicial transfer orders were missing and unfiled on the docket, Judge Yu is amenable to suit hereunder.

268.   Hon. Scannicchio – as Hon. Yu's supervising judicial officer – also bears responsibility for Judge Yu's grotesque affront to the Constitution. Like Judge Yu, Hon. Scannicchio knowingly emplaced the Custody Proceedings on Calendar 89 without authority and thereby acted wholly without jurisdiction to get the matter before Judge Yu.

### COUNT VI - VIOLATION OF RIGHT TO FAIR NOTICE OF CLAIMS
*42 U.S.C. § 1983*; *Scannicchio, Yu, Mirabelli, Elster*

269.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

270.   By failing to commence action against Plaintiff with a pleading, in violation of the civil procedure rules in Illinois, Attorney Mirabelli is responsible for Plaintiff's deficient joinder.

271.   By continuously maintaining for twenty (20) months that Plaintiff is an indispensable party under the Custody Proceedings, Attorneys Mirabelli and Elster have knowingly and deliberately forced the Domestic Relations Division – notably Judge Yu and his supervisor Hon. Scannicchio – to maintain the pendency of the proceeding against Plaintiff. The proceeding has caused aggravation of her interstitial cystitis and PTSD, frustration, distress and

mental anguish and invaluable loss of time (including business loss for her therapy business and attorneys fees).

272.    It is axiomatic that Plaintiff is entitled to know the charges against her under the "mystery trial" set for May 1-2, 2025 in order to have any hope of preparing a reasonable defense for the fast-approaching "mystery trial" wherein her freedom is at stake.

273.    Hons. Yu and Scannicchio are amenable to suit hereunder because the proceeding was maintained on Calendar 89 and the "mystery trial" set for a date certain wholly without jurisdiction and lacking the filing of required judicial transfer orders on the docket. ,

### COUNT VII - ABUSE OF PROCESS
*42 U.S.C. § 1983; Jane F. Girard, Mirabelli, Elster*

274.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

275.    Jane F. Girard masterminded the wrongful joinder – executed and maintained under the leadership of Attorneys Mirabelli and Elster – of Plaintiff for the ulterior purpose of causing maximum pain and suffering to Plaintiff, as a form of improper retribution for marrying Kenton Girard.

276.    When Plaintiff was "actioned" with papers under her deficient joinder, she was provided a Motion to Join Third Party on which she was neither in the caption or otherwise named. Is it neither normal or customary to commence proceedings against a new party with a motion, nor is it normal or customary to commence proceedings against a new party with a paper which does not name that party. Any subsequent papers which might be retroactively construed as pleadings against Plaintiff do not operate to cure the violations at the time of joiner under 735 ILCS 5/2-201(a), wherein Plaintiff was not actioned with a complaint/pleading.

277.    As a result, the elements of abuse of process are satisfied.

278.     Attorneys Mirabelli and Elster are also liable hereunder because they knew at all times they had no viable or conceivable claim against Plaintiff. They used their influence and clout with the Domestic Relations Division to improperly join Plaintiff, and then by filing countless motions seeking her fining or jailing, in a manner which transparently demonstrates the true purpose of her joinder: harassment and leverage against Kenton Girard. Attorneys Mirabelli and Elster cannot hide behind erstwhile judicial officer William S. Boyd's approval of their plans to join Plaintiff to avoid liability hereunder: they are solely responsible for violating the requirements of actioning Plaintiff with a complaint/pleading under 735 ILCS 5/2-201(a).

## COUNT VIII - NEGLIGENCE
*All Defendants (**42 U.S.C. § 1983** only as to Cook County Defendants)*

279.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

280.     All of the Defendants hereunder owed a duty of care to Plaintiffs, including a duty to make accommodations and to provide courtroom access for Plaintiff owing to her disabilities in keeping with the requirements under Title II of The Americans with Disabilities Act of 1990.

281.     However, those duties were breached wherein the Defendants intentionally refused to accommodate Plaintiff with the ability to participate in court dates via Zoom. In the case of Judge Yu, he knowingly convened court dates adverse to Plaintiff's interests – including striking her TP Claims without legal basis – knowing that she was medically incapable of participating in a shocking affront to Plaintiff's qualifying ADA medical conditions.

282.     Those duties were further breached wherein additional staff from Domestic Relations including Hons. Scannicchio and Ahern and clerk Adam P. Monreal Esq, despite full knowledge of the fight over ADA accommodations as to Plaintiff, and the violations of Plaintiff's First Amendment Rights on October 18 2024, stayed on the sidelines of the Custody

Proceedings and refused to restore Plaintiff's access to the courtroom proceedings. Finally, Jane F. Girard had a duty not to abuse process by vexatiously and improperly joining Plaintiff.

283.     As a result of these breaches of duties, Plaintiff has been harmed: (a) she has been denied access to the court dates in the Custody Proceedings, (b) she has experienced severe emotional distress and mental anguish and physical worsening of her symptoms under PTSD and interstitial cystitis, (c) her therapy and counseling business has suffered a setback measured in lost revenues and clientele, and (d) she has suffered the indignity of these violations. The judicial defendants cannot claim immunity here: Hon. Fernandez/Hon. Ahern disregarded Plaintiff's ADA rights after their court divested itself of jurisdiction, and Hon. Yu's Calendar 89 never acquired jurisdiction owing to missing judicial transfer orders.

## COUNT IX - DECLARATORY RELIEF
### *All Defendants except Jane F. Girard*

284.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

285.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants denies, that its courtroom access policies deny the full and equal access to the services and facilities of its court system, which Defendants operate and controls, fails to comply with applicable laws including, but not limited to, Title II of the Americans with Disabilities Act.

286.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## COUNT X - INJUNCTIVE RELIEF
### *All Defendants except Jane F. Girard*

287.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

288.     Plaintiff seeks injunctive relief calculated to cease the equal protection violations and other civil rights violations it is and has been committing against Plaintiff, and to establish

and disseminate policies and procedures that ensure that ADA accommodations are not weaponized again.

289.    These policies and procedures should include: 1) training members of the Domestic Relations Division staff to properly field requests from persons with disabilities; 2) proper screening for actionable disabilities; 3) contours of reasonable accommodations; 4) preserving investigation evidence; and 5) publishing requests for ADA accommodations in order to enhance visibility and accountability to the public.

WHEREFORE, Plaintiff prays this Court grant the following relief:

1) Compensatory damages in an amount to be determined at trial;
2) Attorneys fees and costs under 42 U.S.C. § 1988 and under 29 U.S.C. § 794a(b);
3) Nominal damages for violations of constitutionally protected rights;
4) Such other relief that this Court may deem just, equitable and proper;

Dated: March 09 2025                    Respectfully Submitted,

Marissa Girard, *In Pro Se*
/s/ Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
Email: marissadakis@gmail.com
Tel: 773-425-4393

## CERTIFICATE OF SERVICE

The undersigned certifies that this paper was electronically filed with the clerk of this Court on March 9 2025 and was provided via email to the attorneys who have filed appearances in this matter.

/s/ Marissa Girard