

FILED
5/14/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

TDD

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARISSA GIRARD,<br><br>    Plaintiff,<br><br>  v.<br><br>JUDGE ROSSANA P. FERNANDEZ,<br>JUDGE REGINA A. SCANNICCHIO,<br>JUDGE GREGORY E. AHERN,<br>JUDGE WILLIAM YU,<br>ELENA S. DEMOS JD,<br>VINCENT D. WALLER JD,<br>ADAM P. MONREAL ESQ,<br>EBONY CHEERS,<br>JANE F. GIRARD,<br>ENRICO J. MIRABELLI ESQ, and<br>MATTHEW D. ELSTER ESQ,<br><br>    Defendants. | Civil Action No. 1:25-cv-00136<br><br>District Judge Andrea R. Wood<br><br>Magistrate Maria Valdez<br><br>Plaintiff's Opposition to the<br>Defendants' Motions to Dismiss |

Plaintiff MARISSA GIRARD, in pro se, for her Opposition to the Motions to Dismiss brought by the Defendants, states as follows:

**I. The domestic relations exception is not applicable here.**

Defendant Jane F. Girard is the only defendant to raise the notion (Dkt[26]) that the domestic relations exception precludes this suit. However, as the Seventh Circuit has recently instructed: "The domestic-relations exception applies when a litigant asks a federal court to provide one of the unique forms of relief associated with domestic relations (e.g., a decree regarding divorce, alimony, or child custody), *see Ankenbrandt v. Richards*, 504 U.S. 689, 706-07 (1992); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998), or when the issue raised by the litigant in federal court is ancillary to the domestic-relations proceedings in state

court, *see Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006); *Friedlander*, 149 F.3d at 740. *Sheetz v. Norwood*, No. 14-1732, 3-4 (7th Cir. 2015)

Here, importantly, Plaintiff *is not seeking review of any court orders or decisions* involving the granting of divorce, decrees of alimony or child custody orders. The state court has yet to rule thereunder, so there is no decision or order prospectively available for review. Instead, this lawsuit seeks relief from the corrupt actions of the Defendants. Even if a pleading were to sprinkle in causes of action of a "domestic relations" variety, the Seventh Circuit has argued for federal jurisdiction:

> Unsure that there is federal jurisdiction, we express no view of the merits of any of the claims but add that if there is at least one colorable federal claim not barred by the probate exception, the district court has jurisdiction" *Jones v. Brennan*, 465 F.3d 304, 308-9 (7th Cir. 2006)

In case of any doubt, the *Sheetz* decision provides granular context which is applicable for the purposes of concluding that the instant pleading passes jurisdictional muster:

> But although Sheetz refers to those orders as "void" throughout his complaint, he is principally attempting to litigate misconduct that occurred *outside* the state-court proceedings—the alleged failure of the defendants to report or otherwise end the alleged abuse inflicted on Sheetz by his father. He can pursue those claims without asking to set aside the state court's orders; his claims are analogous to the tort claims that the Supreme Court has held are not barred by either the domestic-relations or probate exceptions. *See Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006); *Ankenbrandt*, 504 U.S. at 704; *see also Struck*, 508 F.3d at 860. *Sheetz v. Norwood*, No. 14-1732, 4 (7th Cir. 2015)

Under this lens, to the extent that Plaintiff has cried foul about the goings-on inside the courtroom, the wrongdoing at the heart of the First Amended Complaint ("FAC", Dkt[15]) involves misconduct that predominantly occurred *outside of the proceedings* e.g. conversations with disability coordinators, being denied access to attend court over Zoom, the crafting of a criminal contempt trial from the confines of the Beermann LLP boardroom, the serving of a summons and no pleading by a special process server at Plaintiff's home, and the continuing of the proceedings after they were terminated under a notice of DWP in December 2024. FAC at ¶¶

82-86, 234-238, 270-273, 198.

However, even more powerfully, Illinois Supreme Court Rule 922 emplaces a time limit of eighteen (18) months on custody proceedings. The underlying post-decree proceedings were initiated by Jane F. Girard in May 2022; those proceedings are now entering month number thirty-seven (37). In other words, twice the statutory time limit has been blown. The only way to circumvent such a time limit is to obtain a written finding of good cause to extend from the state court, involving the child representative. Here, however, the state court proceedings have been without a child representative since August 2024. Fatally, Beermann LLP has never sought such an extension. As a result, the domestic relations "claims" in the state court proceeding are null and void. Incidentally, there are no such "claims" because no pleadings have been filed by Jane F. Girard – in abrogation of the constitutional right to fair notice of claims. FAC at ¶¶ 209, 220-222.

## II. *Hadzi-Tanovic* provides a helpful framework to evaluate the propriety of abstention.

A recent proceeding before this District offers some structural pleading similarities with respect to the pleading under the instant matter:

> In October 2014, Slobodan Pavlovich filed proceedings for dissolution of marriage against his then-wife Aneta Hadzi-Tanovic in the Circuit Court of Cook County, Illinois. Throughout the proceedings, Hadzi-Tanovic and Pavlovich engaged in a heated custody battle. Each parent accused the other parent of abusing the minor children. Hadzi-Tanovic and Pavlovich agreed to equal parenting time in an agreed order that the state court entered on February 26, 2015. That order did not end the parties' dispute over parenting time and custody, however.
>
> In this case, Hadzi-Tanovic is suing Pavlovich, [DCFS rep] Pasulka, and [family court] Judge Johnson. She brings two conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985(3). She also brings state law claims for abuse of process and intentional infliction of emotional distress. She alleges that the defendants conspired to deprive her of her parental rights and her children of their rights to familial association under the Due Process Clause of the Fourteenth Amendment.
>
> Judge Johnson's motion invokes several doctrines in support of dismissal for lack of subject-matter jurisdiction-namely, the domestic-relations exception to federal jurisdiction… and the *Younger* abstention doctrine. None of the doctrines the motion relies upon, however, deprive this Court of subject-matter jurisdiction or otherwise warrant dismissal of the plaintiff's claims. *Hadzi-Tanovic v. Johnson,* 20-cv-03460, 2, 5-6 (N.D. Ill. Nov. 24, 2021)

Similar to Hadzi-Tanovic, Plaintiff brings this matter for injuries sustained in connection with her improper joinder in the underlying family court proceeding. The gravamen of the instant matter is Plaintiff's quest for relief owing to injuries sustained by an array of officers of the Cook County family court at the direction of the corrupt law firm Beermann LLP and its client Jane F. Girard. Both suits complain about corruption in Cook County family court proceedings, and both suits are inappropriate for abstention under either the domestic relations carve-out[1] or *Younger*[2].

However, the similarities end there. Whereas Hadzi-Tanovic emplaced before this District Court the task of examination and criticism of the state court's application of family law, Plaintiff here does not make any remotely similar request. Furthermore, the judicial defendants name hereunder neither preside over the state court proceedings or have been removed therefrom.

Adjudication of the claims here does not portend or precipitate any impact on the family court proceedings which are now presided over by a fresh, new judicial officer Robert W. Johnson. Furthermore, as highlighted above, the domestic relations "claims" are null and void. Such facts imply that there are no cognizable comity and federalism grounds to support abstention here because adjudication of the claims before this Court does not threaten to

---

[1] This District confirmed that Hadzi-Tanovic falls within the corruption exception to domestic-relations abstention in 2021:

Her alleged injury stems not from the state court orders but from the alleged conspiracy. And to the extent that Hadzi-Tanovic's claims do ask this court to review the orders and apply Illinois family law to determine damages, **her claims fall under the corruption exception and are not barred**. (emphasis added) *Hadzi-Tanovic v. Johnson*, 20-cv-03460, 6, 8 (N.D. Ill. Nov. 24, 2021)

[2] It should be noted, however, that the Seventh Circuit issued a landmark ruling just last year that there is no corruption exception to *Rooker-Feldman*, thereby reversing the District Court. In its ruling it found that Hadzi-Tanovic moreover did appeal from a final judgment in fact:

The challenged state court judgment in this case was "rendered before the district court proceedings commenced," so that Hadzi-Tanovic was a "state-court loser." Judge Johnson issued his order requiring that her parenting time be supervised on June 13, 2018. Hadzi-Tanovic filed a notice of appeal, but the Illinois appellate court dismissed her appeal for want of prosecution on January 13, 2020. Judge Johnson's order was therefore final well before Hadzi-Tanovic filed this federal lawsuit on June 12, 2020. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399-0 (7th Cir. 2023)

influence or otherwise manipulate the underlying family court proceeding. Finally and notably, *Hadzi-Tanovic* implicates federal review of a final order concerning parenting time entered by the presiding family court judge *nearly two years before* the pleading was filed. By contrast, Plaintiff has appeared in this District Court before the underlying family court has ruled upon the custody modification request which incepted those proceedings. Furthermore, no such ruling shall be forthcoming because of the time bar under Illinois Supreme Court Rule 922.

Furthermore, Jane F. Girard has been divested of a judicial custody remedy because of her Fifth Amendment allocation on September 7 2023 (FAC at ¶224) under questioning by Prosecutor Mary Stein from the State's Attorneys Office. Finally, those proceedings are currently removed to federal court before Judge Jeremy C. Daniel. Jane F. Girard's "claims" are a nullity for the separate reason that she has not reduced them to pleadings, whether against Kenton Girard or Marissa Girard, in violation of the constitutional right to fair notice of claims.

**III.     *Younger* and *Rooker-Feldman* also fail here.**

*Younger* does not operate to preclude the claims against the Judicial Defendants. Instead, *Younger* abstention only applies to the very narrow category of state civil proceedings which are akin to criminal prosecutions, or implicate a state's interest in enforcing the orders and judgments of its courts. Indeed, the Supreme Court under *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013) has recently reaffirmed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," citing to *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (*NOPSI*).

Here, the instant proceedings do not touch on the Cook County family court's ability to perform its judicial function. The state proceedings were initiated by Jane F. Girard, not by the

State of Illinois. Neither does the instant matter trace its origins to any sort of administrative action, wrongdoing investigation, contempt proceeding, or enforcement matter initiated by the State of Illinois. Neither does a state actor count among the parties in the underlying family law proceedings. Supreme Court Justice Ruth Bader-Ginsburg provides powerful guidance applicable here:

> We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI*, 491 U.S., at 368, 109 S. Ct. 2506, 105 L. Ed. 2d 298.
>
> Circumstances fitting within the Younger doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)

The modern jurisprudence under *Rooker-Feldman* traces to *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005) The facts are simple here: Jane F. Girard initiated the underlying family court proceedings ostensibly in order to modify a 50-50 custody order. There is no trial date set at this time. Plaintiff is accordingly not a loser under a state court judgment.

Even if *arguendo* the Court were to accept the argument that case management orders promulgated on October 18 2024 by Hon. Fernandez, on December 3 2024 by Hon. Fernandez and on February 14 2024 by Hon. Yu constitute final orders or judgments and therefore Rooker Feldman is not off the table (Dkt[28] at pp. 4-5), a closer look at the state court proceeding provides clarity. Under the FAC at 58, Hon. Fernandez divested herself of subject matter jurisdiction in the court date on October 18 2024 – specifically before propounding a case management order. Therefore that order was extra-judicial and lacking the force of law. Simply put, it is not a judicial "order" or a "judgment". Because the judicial transfer orders from January

14 2025 and January 23 2025 remain missing and unfiled on the docket (FAC at ¶¶177-182), the jurisdiction of Calendar 89 (Judge Yu's courtroom) is in question. Therefore his orders aforedescribed also do not constitute judicial "orders" or "judgments".

The Defendants (particularly the Judicial Defendants, under Dkt[29]) have misapprehended the notion that a District Court must abstain when there is a parallel underlying state proceeding. As legendary Supreme Court Justice Ruth Bader-Ginsburg has articulated: "This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' *McClellan* v. *Garland*, 217 U. S. 268, 282 (1910); accord *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 928 (1975); *Atlantic Coast Line R. Co.*, 398 U. S., at 295." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005)

Under this lens, to the extent that Plaintiff has cried foul about the goings-on inside the courtroom, the corrupt action has been implemented outside of the courtroom as aforedescribed.

**IV.     The exercise of jurisdiction here does not intrude on a state proceeding.**

Finally, one of the most important guideposts for a District Court's introspection into the appropriateness of abstention is whether exercising jurisdiction would intrude on state court proceedings, in a generalized affront to federalism. Contemporary guidance as to what constitutes "intrusion" on the state courts was dispensed by the Seventh Circuit under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021)[3]:

> [The plaintiff] cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—**to use a favorable federal court judgment in state court to influence the state judge**'s parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest. (emphasis added)

---

[3] This Court in its recent court date noted the Woodard Doctrine.

As previously noted, the FAC does not request involvement by this court in any of the domestic relations determinations in the underlying family court proceeding, and the domestic relations "claims" are null and void and time-barred at this time.

In case of doubt, the Judicial Defendants either do not currently preside or have been removed from those proceedings and therefore any adverse ruling would not have any bearing on the actions of the current judicial officer Robert W. Johnson. The other Cook County Defendants also have been removed from involvement with the state court proceedings.

The nature of the instant matter before this Court does not implicate "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support", and therefore does not even possess a "domestic relations" look or feel under the verbiage espoused by the Seventh Circuit under *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). As a result, on this basis alone, it is a stretch to conclude that litigating civil rights and ADA claims would implicate unacceptable influence of the state court custody proceedings.

Ultimately, the instant case, structurally, is akin to *Hadzi-Tanovic* minus any request for review of a ruling of a distinctive domestic relations character. The only living, breathing claims in the state court matter are the TP Claims filed by Plaintiff on March 5 2025 and the recently filed declaratory judgment cross claims filed against Plaintiff by Kenton Girard.

**V.     Other forms of abstention do not save the Defendants, either.**

"Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them. The Supreme Court has recognized four main categories of abstention named after the cases that gave rise to them: *Pullman,*

*Burford*[4], *Younger*, and *Colorado River*[5]." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) Contemporary guidance as to what constitutes "intrusion" on the state courts was dispensed by the Seventh Circuit under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021):

> [The plaintiff] cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—to use a favorable federal court judgment in state court to influence the state judge's parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest.

The analysis under *Burford* is simple: there is no complex state question implicating significant public interest concern under the instant matter; neither is there a well developed state apparatus designed to achieve consistent results as to resolution of claims such as here . Quite the contrary, the civil rights and ADA causes of action implicate important federal questions for which the state court is not suited to achieve a just resolution, much less a result consistent with federal jurisprudence. This District reminds us of the contours of *Burford* jurisprudence in the Seventh Circuit:

> *Burford* abstention is appropriate in two situations. First, federal courts should abstain from **deciding difficult questions of state law** bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. We should also abstain from the exercise of federal review that would be disruptive of state efforts to establish a **coherent policy with respect to a matter of substantial public concern**. (emphasis added) *Hanna v. City of Chicago*, 212 F. Supp. 2d 856, (N.D. Ill. 2002)

---

[4] *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943) was about the tension between slow-moving federal proceedings and the Texas oil industry, and the indefatigable public interest in oil and gas which is complex state concern very effectively serviced by a vast and nimble array of State of Texas specialists. The abstention principle which is the legacy of Burford is for the federal judiciary to stand down wherein complex public interests are more efficiently and coherently served by state proceedings which specifically call upon an array of state specialists dedicated to resolving problems within their domain.

[5] To quote in relevant part from *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 804-5 (1976): "Under the Colorado Act, the State is divided into seven Water Divisions, each Division encompassing one or more entire drainage basins for the larger rivers in Colorado… Water Referees in each Division rule on applications for water rights filed within the preceding five months or refer those applications to the Water Judge of their Division… A State Engineer and engineers for each Division are responsible for the administration and distribution of the waters of the State according to the determinations in each Division." Abstention under *Colorado River* favors unified adjudication of rights wherein state systems have been designed for making such allocations mindful of the effect on others. It differs facially from *Burford* wherein the motivating concern is that determining the rights of one so-affected party affects the rights of all others. Dispute resolution inherently should involve the state allocation system, which can only be done via the state courts.

As to the operation of *Colorado River*, the Seventh Circuit gives great weight to avoiding piecemeal litigation and efficiency. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1022 (7th Cir. 2014) (quoting *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 756 (7th Cir. 2006)). When "the state and federal forums have substantially the same parties before them and are litigating substantially the same issues arising from the same set of facts," courts in the Seventh Circuit are inclined to abstain under *Colorado River. Id.* The analysis can stop there: the "same parties" requirement is not even remotely satisfied between the instant matter and the underlying family court proceedings[6].

## VI. Judicial immunity and its progeny absolute immunity are both wanting.

The participation by the Judicial Defendants in exercising jurisdiction after being divested, scheduling court dates and transferring subject matter jurisdiction in the total absence of jurisdiction do not constitute "judicial acts". Further, in exercising jurisdiction after the proceedings were terminated under DWP in December 2024 – and stubbornly thirty-seven (37) months into the post-decree proceeding in abject disregard for the time limits imposed by Illinois Supreme Court Rule 922 – judicial immunity has been nullified.

Judicial acts are distinct from the "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 226, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Three factors generally govern whether a particular act or omission is entitled to judicial immunity: (1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge; (2) whether the act is normally performed by a judge; and (3)

---

[6] Although not relevant for our immediate purposes, the abstention analysis under *Colorado River* in the Seventh Circuit evaluates ten (10) factors. *Freed* at 1021. Finally, the Seventh Circuit has explicitly instructed that lower courts should stay, rather than dismiss, proceedings under the doctrine. *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002)

the expectation of the parties, i.e., whether the parties dealt with the judge as a judge. *Dawson v. Newman*, 419 F. 3d 661 (7th Cir. 2005)

Prongs (2) and (3) are violated here – no one expects a judge to keep asserting jurisdiction when there is none, or wherein the proceedings flipped to "time barred" status in November 2023, or wherein the proceedings were terminated under DWP in December 2024.

The Seventh Circuit recently propounded a landmark decision under which the activities of two judges (Boliker and Dickler) were reviewed and one of those (Boliker) was determined to be lacking the protection of judicial immunity. "Judge Boliker opens with the assertion that she is entitled to judicial immunity because 'she was acting to ensure the security and integrity of the court.' That strikes us as a step too far. Although judicial immunity is broad, it is not limitless… A judge does not enjoy immunity if he or she is acting in the "clear absence of all jurisdiction"... **A judge is also amenable to suit for non-judicial acts.**" (emphasis added) *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018)

As to the arguments (Dkt[28] at pp. 8-10) advanced on behalf of Defendants Demos, Waller, Cheers and Monreal as to absolute immunity because they were at all times following the directives of judicial officers, that argument is also fallacious. To wit, Defendants Demos and Waller and Cheers could not be comprehended as fulfilling the orders of Hon. Fernandez after she divested herself of all jurisdiction under the state court proceedings on October 18 2024 in open court.

Mr. Monreal is a bit different because he works for Judicial Defendant Scannicchio, who is herself the Presiding Judge of the Domestic Relations Division and he exercises significant autonomy. He is not a mere pawn following orders. Plaintiff suggests that discovery will be required to elicit the true degree of autonomy in order to evaluate his claim to immunity later on.

## VII. Abuses of constitutional rights cautions against dismissal.

Under the FAC, a number of serious varieties of violations of constitutional rights have been adduced: (a) violation of fair notice of claims, and (b) violations of the First and Sixth Amendment.

The Supreme Court has taken care to ensure that the doors to federal courts remain open when there are powerful reasons to believe that state courts will not protect federal constitutional rights. For example, in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed. 2d 22 (1965), African-American plaintiffs sued in federal court to block state prosecutions in a state court system that were chilling protected First Amendment expression, and there was reason to question the good faith of the state. *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 680 n.5 (7th Cir. 2010)

The situation here is similar: the now-recused Judicial Defendants denied Plaintiff access to court and knowingly abused Plaintiff's constitutional rights by forcing her to endure the state court proceedings in spite of having been long terminated. As in *Dombrowski*, Plaintiff has made a preliminary showing that the Cook County family court does not exercise prudential care for her constitutional rights.

## VIII. The negligence claim is viable.

Charitably, the Defendants have disregarded Plaintiff's rights to accommodation under Title II of the ADA. Arguably, they have intentionally weaponized the ADA accommodations process against Plaintiff (FAC at ¶185) resulting in both economic and non-economic harms.

Insofar as the Cook County Defendants (as state actors) and the Beermann Defendants (officers of the court acting under color of state law) have an obligation to uphold the law and to assure especially that federal and constitutional protections for litigants – including the scope of

protections enshrined under Title II of the ADA – they have violated this duty. Such violation has proximately caused both economic and non-economic damages to be sustained by Plaintiff, who suffers from PTSD and interstitial cystitis, both recognized disabilities under the ADA.

The general rule cited by Wilson Elser in their brief (Dkt[27] at p. 10) "that an attorney owes a professional duty only to the attorney's client, not to third parties" has exceptions such as a duty not to abuse the position of authority they enjoy as officers of the court to mislead a judicial officer to take action against a litigant in violation of Title II of the ADA. By encouraging Judicial Defendants Fernandez and Yu to order Plaintiff to appear in person for court dates (such as on October 18 2024, February 7 2025 and February 14 2025) the Beermann Defendants have weaponized ADA accommodations to harass and intimidate Plaintiff.

**IX.     Plaintiff has not failed to state a cognizable claim against Jane F. Girard.**

Defendant Jane F. Girard suggests that the FAC is "unintelligible" because it contains "inappropriate" and "untrue" details. They point to the labeling of Jane F. Girard as an admitted sex abuser in support, claiming that such labeling is somehow undeserved. However, they do not make any effort whatsoever to rebut the basis for that characterization: Jane F. Girard asserted her Fifth Amendment right against self-incrimination during an interview by Prosecutor Mary Stein pursuant to a criminal investigation for raping her minor children Gw and Gr on September 7 2023.

Failing to persuade on the "unintelligible" prong, Defendant Jane F. Girard proceeds to mount an argument that the claims against her for Abuse of Process (Count VII) and Negligence (Count VIII) must fail. To this end, Plaintiff acknowledges a typographical error in the FAC. She did not mean to seek relief against Jane F. Girard under the auspices of 42 USC. 1983. Indeed, abuse of process is a recognized state cause of action in Illinois. The theory of duty which is

articulated under the Negligence count is lashed together with the Abuse of Process count (FAC at ¶282). Breach and proximate causation of both economic and non-economic harms are adequately set forth.

## X.     Litigation privilege is inapplicable.

The litigation privilege does not apply to all misconduct that occurs during judicial proceedings. To be protected, a statement or conduct must be related to the judicial proceedings in which it is made or occurs. According to the Restatement (Second) of Torts, it must have "some" relation to the proceeding (RESTATEMENT (SECOND) OF TORTS § 587).

In determining if statements or conduct are entitled to protection under the litigation privilege, courts examine their purpose along with the method used to achieve that goal (T. Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 PEPP. L. REV. (2004) at 935). There is no protection for "use of legal process in an improper manner or primarily to accomplish a purpose for which it was not designed" (Oran F. Whiting, Litigation Privilege Immunizes Lawyers from Fraud Actions, ABA (Aug. 8, 2013).

Absolute immunity does not protect lawyers "against claims alleging the pursuit of litigation for the unlawful, ulterior purpose of inflicting injury on the plaintiff and enriching themselves and their client, despite knowledge that their client's claim lacked merit" (Whiting, *supra*.)

Plaintiff has precisely alleged that the Beermann LLP Defendants assaulted her with their offensive litigation tactics in the underlying family court matter for the past two years without ever having properly actioned her with a pleading in that matter (FAC at ¶224). The sole purpose has been to intimidate Plaintiff and to pressure her husband Kenton Girard to settle the family court proceedings for an extortionate payment of "legal fees".

The Beermann Defendants' attempt to hide behind the "protective veil" of the state court proceedings (Dkt[27] at pp. 6-7) is misplaced. As we have already established with respect to the inapplicability of the Domestic Relations Exception, large swaths of the state court proceedings were conducted without jurisdiction. To wit, since November 2023 the proceedings – as concerns any domestic relations component – were terminated under Illinois Supreme Court Rule 922. Per the termination under DWP filed in December 2024 – which remains uncontested as of this filing – the proceedings were terminated at that time. There are no pleadings by Jane F. Girard and therefore no cognizable – much less judicable – claims.

## XI. The Beermann LLP Defendants are liable under Section 1983.

The Beermann LLP Defendants (Dkt[27] at pp. 6-7) rely on five decades old guidance under *Polk County v. Dodson*, 454 U.S. 312, 318–19, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) for the false proposition that attorneys cannot be held liable under Section 1983. In reality, the analysis under *Polk County* concerns a public defender's liability under Section 1983 for assuming the role of a private attorney on behalf of a criminal defendant charged by the state.

Similarly, Wilson Elser relies on the proposition that Section 1983 liability of a private attorney turns on the articulation of **an actual conspiracy** with state officials. Again, Wilson Elser has twisted the requirements, which were well established under *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) wherein a private party may be held liable under Section 1983 if "he is a willful participant in joint action with the State or its agents."

Moreover, proving out the willful participation is not a threshold matter at the motion to dismiss stage, but rather ripens for evaluation at the summary judgment stage. *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 435 (7th Cir. 1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Notwithstanding such fact, Plaintiff has already sufficiently substantiated

the circumstances of willful participation between Beermann LLP and Judicial Defendant William Yu. To being, the extra-jurisdictional orders[7] signed by Defendant Yu on February 7 2025 and February 14 2025 were prepared by Beermann LLP. Continuing, on February 11 2025, Plaintiff filed a formal request to remove Judicial Defendant Yu for cause (FAC at ¶200), wherein the pleading includes the text of the operative request, including a section entitled "I. Ignoring TP Respondent's health notice shows favoritism for Beermann LLP" as well as another damning statement about collusion between Beermann LLP and Judicial Defendant Yu: "The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that he is taking orders from Beermann LLP." Finally, the improprieties add up wherein Judge Yu convened a court date on February 25 2025 – at which point he had been sidelined per operation of 735 ILCS 5/2-1001(a)(3). FAC at ¶243.

### XII. Liability under Section 1983 for violating the Sixth Amendment is plausible.

Again, focusing on the collusion between the Beermann LLP Defendants and Judicial Defendant William Yu, Section 1983 provides a vehicle for holding the Beermann LLP Defendants. In particular, they are liable for violating Plaintiff's rights under the Sixth Amendment. Under the very case law cited by Wilson Elser (Dkt[27] at p. 8, "Rights under this amendment are triggered only by "an arrest, indictment, **or some other official accusation**." *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009) (emphasis supplied)

We recall from FAC at ¶234:

> The order signed on February 14 2025 makes it plain that Plaintiff has no role to play in the upcoming evidentiary hearing. However, according to the testimony of Beermann LLP Attorney Enrico J. Mirabelli, the trial is calculated to seek a finding of criminal contempt against both Kenton Girard and Plaintiff. Plaintiff's constitutional right to fair notice of the claims which lie

---

[7] We note these were extra-jurisdictional because of the termination under DWP which was noticed in December 2024, and the missing judicial transfer orders from January 14 2025 and January 23 2025 between Calendars 1 and 51, under which any subsequent calendar's presiding over the state court action raises questions about its subject matter jurisdiction.

against her has been violated. Moreover, under Enrico J. Mirabelli's re-casting of the trial as a criminal contempt proceeding, Plaintiff's Sixth Amendment rights are also being violated.

As described under the FAC, Defendant Enrico J. Mirabelli cast his aspiration for a trial – in open court before Judge Yu no less – as a criminal contempt proceeding. There is no prosecutor on the scene or Mr. Mirabelli is being allowed by Judge Yu to "play prosecutor", there is no indictment or bill of charges, the proceeding is set to take place in a domestic relations court instead of a criminal tribunal, and Judge Yu plans to adjudicate such criminal proceeding without a jury of peers installed. Therefore, it follows plainly that Plaintiff's Sixth Amendment rights are being eviscerated.

### XIII. Constitutionally required fair notice of claims is at issue here.

Without a doubt, the most shocking aspect of the brief put forward is Wilson Elser's repudiation of the constitutional right to fair notice of claims.

Fair notice is a fundamental aspect of due process, rooted in the Fifth and Fourteenth Amendments of the U.S. Constitution, which ensure that no person shall be deprived of life, liberty, or property without due process of law. It ensures individuals are informed of legal actions against them, allowing them to prepare a defense. This principle safeguards against arbitrary government actions.

In legal proceedings, fair notice requires information provided to parties to be clear, specific, and timely. This includes sufficient detail about the nature and basis of the claim or charge. For instance, in civil litigation, the complaint must outline the factual allegations and legal grounds for relief. In criminal cases, indictments or bills of charges must specify the alleged conduct and statutory provisions violated. This prevents surprise and allows for a meaningful defense to be conducted.

The courts have emphasized the importance of fair notice in cases like *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) wherein notice must be "reasonably calculated" to inform parties of an action and allow them to present objections. In civil proceedings, fair notice ensures all parties are aware of the claims, enabling them to prepare a defense or response. Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim" showing entitlement to relief. This rule underscores the necessity for clarity and specificity, mandating sufficient factual allegations to inform the defendant of the dispute. The adequacy of notice often hinges on the precision of pleadings. The landmark decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) established the "plausibility standard," requiring claims to include enough detail to make them plausible. This ensures defendants are not left to speculate about the specifics, allowing for an informed response.

It is axiomatic that Jane F. Girard's failure to provide a pleading to Plaintiff constitutes a prima facie violation of Plaintiff's constitutional right to fair notice of claims. In reflection of such an unacceptable state of affairs, failure to tender a pleading similarly violates both the Federal Rules and the Illinois Rules of Civil Procedure.

## XIV.   Regarding Counts III, IV (ADA Act and Rehab Act)

Should the Court decide[8] that the Defendants named under Counts III and IV are not the proper parties because they are named in their individual capacities or because the only responsible party is a public entity/state agency or because of Plaintiff's invocation of Section 1983, Plaintiff duly requests the opportunity to amend her pleading accordingly.

---

[8] Recent case law might tip in this direction. For example: "ADA claims against individual defendants in their individual capacity must fail because the Act authorizes suits only against public entities." *Brewer v. Wis. Bd. of Bar Examiners*, 270 F. App'x 418, 421 (7th Cir. 2008)

Plaintiff therefore respectfully requests that this Court deny the Motions to Dismiss brought by the Defendants hereunder.


Dated: May 12, 2025 　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　MARISSA GIRARD, *In Pro Se*

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Marissa Girard
　　　　　　　　　　　　　　　　　　　　　　　　　　965 Forestway Drive
　　　　　　　　　　　　　　　　　　　　　　　　　　Glencoe, IL 60022
　　　　　　　　　　　　　　　　　　　　　　　　　　Email: marissadakis@gmail.com
　　　　　　　　　　　　　　　　　　　　　　　　　　Tel: 773-425-4393

**CERTIFICATE OF SERVICE**

    The undersigned certifies that this paper and all attachments were (a) electronically filed with the clerk of this Court on May 13 2025, (b) provided via email to the attorneys who have filed appearances in this matter.

/s/ Marissa Girard