IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARISSA GIRARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-00136 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ROSSANA P. FERNANDEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' motions to dismiss [26], [27], [28], [29] are granted. This action is dismissed in its entirety. Because the dismissal is based on a lack of subject-matter jurisdiction, it is without prejudice. *See McHugh v. Ill. Dep't of Trans*., 55 F.4th 529, 535 (7th Cir. 2022). Plaintiff may pursue her arguments in an appropriate state-court forum. Nonetheless, this is a final and appealable order. Accordingly, the Clerk is directed to enter final judgment in favor of Defendants. Telephonic status hearing set for 3/26/2026 is stricken. Civil case terminated. See the accompanying Statement for details.

## STATEMENT

Plaintiff Marissa Girard ("Marissa") has brought this lawsuit against judges, lawyers, court employees, and a litigant involved in child custody proceedings before the Circuit Court of Cook County (together, "Defendants"). She asserts various claims against Defendants related to those proceedings. In response, Defendants have filed several motions to dismiss Marissa's First Amended Complaint ("FAC"). For the reasons that follow, those motions are granted.

### I.     Background

Far from a model of clarity, the FAC spans 70 pages and includes 289 paragraphs, 11 defendants, and eight separately identified causes of action. Below, the Court summarizes Marissa's claims based on what it can gather from the FAC. In doing so, for purposes of the present motions, the Court accepts Marissa's well-pleaded allegations as true and construes her *pro se* complaint liberally. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Brown v. Meisner*, 81 F.4th 706, 707 (7th Cir. 2023).

Kenton Girard ("Kenton") and Defendant Jane Girard ("Jane") are divorced and have two children. Their divorce proceedings have proceeded in the Circuit Court of Cook County, under the case captioned *In Re the Marriage of Kenton Girard and Jane Giard,* Case No. 2015D009633 (Cir. Ct. Cook Cnty.) (hereinafter, "Divorce Case").[1] On November 4, 2015, the state court

---

[1] In this Order, all citations to the "Divorce Case" refer to the public docket in case number 2015D009633 (Cir. Ct. Cook County). After Kenton and Jane's divorce was finalized, the Divorce Case's caption

entered a final judgment setting forth, among other things, Jane and Kenton's agreement to share child custody moving forward. *See* Joint Parenting Agreement and Custody Judgment, Divorce Case (filed November 4, 2015) (hereinafter "Custody Judgment"). Since then, Kenton and Jane have been involved in ongoing disputes arising out of their divorce, including very contentious custody proceedings.

Marissa eventually married Kenton and became involved in Kenton and Jane's custody disputes. In 2023, Jane joined Marissa to the Divorce Case as a third-party respondent based on allegations that Marissa had been interfering with Jane's parenting rights under the Custody Judgment. *See* Verified Petition for Continuing Abuse of Parenting Time, Divorce Case (filed 5/16/2023). Throughout the proceedings, the parties made various requests to modify or enforce the child custody judgment. Post-judgment enforcement remains ongoing in the Divorce Case.[2]

Marissa has filed this lawsuit to address several grievances arising out of the Divorce Case. Her claims fall into a few categories. Some of the claims relate to her requests for reasonable accommodations to aid her participation in certain Divorce Case proceedings. Marissa alleges that she suffers from two medical conditions—interstitial cystitis and Post-Traumatic Stress Disorder (PTSD)—that prevent her from attending court hearings in-person. Broadly speaking, Marissa alleges that she was prevented from attending certain in-person hearings in the Divorce Case because the presiding judges and other court officials declined to allow her to connect virtually to those hearings. She asserts four causes of action related to these allegations: claims for violations of the First Amendment (Count I), Title II of the Americans with Disabilities Act ("ADA") (Count III), and the Rehabilitation Act of 1973 (Count IV), and a claim for negligence (Count VIII). Meanwhile, other claims in the FAC arise out of Marissa's disagreement with various court decisions rendered during the regular course of the Divorce Case. Specifically, Marissa claims that her joinder to the Divorce Case was improper because it was not based on a pleading and it was motivated by bad faith on Jane's part. Marissa advances several causes of action based on these allegations: an alleged violation of the Sixth Amendment (Count V), denial of her "right to fair notice of claims" (Count VI), abuse of process (Count VII), and negligence (Count VIII). The last type of claim raised in the FAC centers on allegations that Jane and her lawyers bribed the judges in the Divorce Case, resulting in biased court orders that violated Marissa's "right to impartial proceedings" (Count II).

Each of the claims is asserted against a number of Defendants. Where necessary, the Court will specify the particular defendants involved in a given claim. Otherwise, it addresses Defendants in four groups. First, Judges Rossana P. Fernandez, Regina P. Scannicchio, Gregory

---

changed to *In Re the Former Marriage of Kenton Girard and Jane Giard*, but the case number was unaffected. The Court may take judicial notice of the actions of other courts or the contents of filings in other courts. *See Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016); *see also Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1093 (N.D. Ill. 1991) (judicial notice of a court order in another case is proper); *see also Burnett v. Ocwen Loan Servicing*, LLC, No. 17-cv-03474, 2017 WL 5171226, at *2 (N.D. Ill. Nov. 8, 2017) (taking judicial notice of docket entries).

[2] Most recently, in February 2026, the state court held a trial and disposed of various motions, leading to a finding that Kenton and Marissa were in contempt of court. *See* Ruling on All Pending Motions at Conclusion of Trial, Divorce Case (filed 2/11/2026).

E. Ahern, and William Yu (collectively, the "Judicial Defendants") are alleged to have presided over or otherwise been involved in the Divorce Case. Second, various employees of the Circuit Court of Cook County are alleged to have been involved in adjudicating Marissa's accommodations requests. These employees—collectively, the "Court Employee Defendants"—include: Elena S. Demos, Court Disabilities Coordinator; Vincent Waller, Human Resources Coordinator; Adam P. Monreal, Deputy Chief Clerk for Presiding Judge Scannicchio; and Ebony Cheers, Courtroom Coordinator for Judge Fernandez. The third group includes only Jane. The fourth group consists of Jane's attorneys in the Divorce Case from Beermann LLP: Enrico J. Mirabelli and Matthew D. Elster (collectively, the "Beermann Defendants"). As remedies, Marissa requests that this Court award compensatory damages, issue a declaratory judgment to inform the parties of "their respective rights and duties," and issue an injunction requiring the establishment of "policies and procedures that ensure that ADA accommodations are not weaponized again." (FAC ¶¶ 288–89.) The FAC does not state against whom the injunction would be issued.

## II.      Discussion

Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are now before the Court. (Dkt. Nos. 26, 27, 28, 29.) Rule 12(b)(1) provides that a party may move to dismiss an action when the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion, the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). However, the Court "may properly look beyond" the pleadings and consider any evidence that "has been submitted . . . to determine whether in fact subject matter jurisdiction exists." *Id.* Because jurisdiction "is the first question in every case," the Court starts and ends with Defendants' jurisdictional arguments. *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).

Defendants raise several jurisdictional doctrines in their motions. Under the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine applies to "procedural state court rulings" or "substantive ones," including "interlocutory orders entered prior to the final disposition of state court lawsuits." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (applying *Rooker-Feldman* to claim challenging state judge's order denying motion for reasonable accommodations). In addition, under the domestic-relations exception to federal jurisdiction, federal courts cannot exercise jurisdiction over certain domestic-relations issues, like child custody judgments and "ancillary proceedings." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). Those matters are better suited for state courts, which "are assumed to have developed a core proficiency" in the domestic arena. *Sykes*, 837 F.3d at 741 (7th Cir. 2016). Finally, *Younger v. Harris*, 401 U.S. 37 (1971), directs "federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with" certain types of "pending state court proceedings." *J.B., et al. v. Woodard, et al.*, 997 F.3d 714, 722 (7th Cir. 2021). "Under *Younger*, abstention is required if the ongoing state matter (1) is judicial in nature, (2) implicates important state interests, (3) offers an adequate opportunity for review of constitutional claims, and (4)

3

involves no extraordinary circumstances, such as harassment or bias." *Richwine v. Matuszak*, 148 F.4th 942, 951 (7th Cir. 2025).

Having considered Marissa's claims in light of these doctrines, the Court concludes that its exercise of subject-matter jurisdiction over her complaint is precluded by a combination of them.

> **A.** **Right to Impartial Proceedings (Count II), Sixth Amendment (Count V), Right to Fair Notice of Claims (Count VI), Abuse of Process (Count VII), and Negligence (Count VIII)**

Marissa's claims in Counts II, V, VI, VII, and VIII all effectively request that this Court second-guess determinations made by the state court during its enforcement of the Custody Judgment. To begin, Marissa's claims under the Sixth Amendment and the "Right to Fair Notice of Claims" (Counts V, VI) essentially allege that Judge Yu and the Beermann Defendants did not provide adequate notice of the reason for Marissa's joinder and subsequent participation in trial. Likewise, the Abuse of Process claim (Count VII) relies on contentions that Jane "masterminded the wrongful joinder" and that her attorneys were complicit in "improperly join[ing]" Marissa. (FAC ¶¶ 275–78.) To take up these claims would require the Court to review the merits of the state court's decision to join Marissa to the Divorce Case as a necessary party. *See* 5/31/2023 Order, Divorce Case (granting Jane's motion to join Marissa as a third-party respondent).

The negligence claim (Count VIII), too, relies in part on allegations that Jane "improperly join[ed]" Marissa to the state-court proceedings. Similarly, Marissa's claim for a violation of the right to impartial proceedings (Count II) is based on allegations that: (1) Judge Fernandez "propounded numerous orders" in the Divorce Case without jurisdiction to do so (FAC ¶ 253) and (2) Judicial Defendants "accept[ed] bribes to render specifically requested favorable decisions to Beermann LLP clients," resulting in "numerous adverse decisions which would not have been rendered by a fair, impartial judge" (FAC ¶¶ 251, 254). There is no doubt that the Court would have to review numerous state-court determinations entered throughout the post-decree proceedings of the Divorce Case to grant her relief on this claim.

These claims are all barred by the domestic-relations exception because they implicate state-court determinations at the core of domestic-relations law. At the center of all these claims is the state court's determination that Marissa's participation in the case was necessary for enforcement of the Custody Judgment. That enforcement process is ongoing; the state court recently entered a contempt finding against Marissa, and it is unclear whether Marissa has taken steps to comply with the contempt order. And the court granted Jane leave to file a fee petition against Marissa, which has yet to be done. Simply put, the Custody Judgment and its enforcement are currently "in the [state] court's control," and this Court "should not try to elbow its way into the fight." *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006). Marissa may bring her challenges to the Divorce Case in those proceedings—*i.e.*, in the court that entered the Custody Judgment and exercises ultimate control over it—or on appeal. *See E.A. v. Gardner*, 929 F.3d 922, 925 (7th Cir. 2019) ("[Illinois] [s]tate courts can and do consider constitutional arguments in custody cases."). Accordingly, the domestic-relations exception bars this Court's exercise of jurisdiction over Marissa's claims in Counts II, V, VI, VII, and VIII. *See Johnson*, 465 F.3d at 308 (applying probate exception to plaintiff's due process claims to the extent that the alleged conduct occurred "in the course of administering the estate").

Moreover, given that the contempt proceedings are ongoing, the Court must abstain from exercising jurisdiction over any of Marissa's claims under *Younger.* Abstention is warranted here because: (1) "civil proceedings involving the contempt process fall within *Younger*'s reach," *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *2 (7th Cir. Jan. 17, 2023); (2) domestic relations cases like the Divorce Case implicate important state interests; and (3) Illinois appellate courts are available to review Marissa's various challenges to orders entered in the Divorce Case. *See FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007) (setting forth *Younger* factors). To be sure, a court must not abstain under *Younger* where "the pending state proceeding was motivated by a desire to harass or is conducted in bad faith." *FreeEats*, 502 F.3d at 596. But "[a] plaintiff seeking to invoke this exception must satisfy a demanding standard by alleging specific, well-developed facts sufficient to convince the court it realistically must intervene to protect the plaintiff's constitutional rights." *Lewis v. Zoeller*, No. 1:12-CV-1093-WTL-MJD, 2012 WL 5384704, at *2 (S.D. Ind. Nov. 1, 2012) (citing *Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999); *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 296–97 (7th Cir. 1994)). Marissa alleges that the state-court judges are biased against her due to bribery and an apparent desire to harass her. However, these allegations are largely conclusory, lacking the support of specific facts showing exceptional bad faith; at bottom, Marissa's objective evidence of bad faith consists of adverse court decisions. Such allegations are not sufficient to prevent *Younger*'s application. *See, e.g.*, *Berrada Props. Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 753–54 (E.D. Wis. 2022) (finding no bad faith and applying *Younger* where the plaintiff offered evidence of bad faith that was "primarily adverbial and adjectival, which is to say conclusory and grounded in a subjective sense of aggrievement").

 **B.**  **First Amendment (Count I), Title II of the Americans with Disabilities Act (ADA) (Count III), Rehabilitation Act of 1973 (Count IV), and Negligence (Count VIII)**

The FAC also includes allegations related to the denials of Marissa's requests for accommodations in state court. Marissa has two health conditions that prevent her from participating in court hearings in-person. Accordingly, she made various requests to be allowed to attend hearings virtually in the custody proceedings.

One of those requests was made to Judge Fernandez, who was presiding over the case during an October 18, 2024 hearing. Marissa had filed a motion for substitution of Judge Fernandez, which was scheduled to be heard at that hearing. Judge Fernandez's scheduling order provided that in-person attendance was required for all parties at the October 18 hearing. (FAC ¶¶ 105, 112); 9/5/2024 Order, Divorce Case. Marissa conveyed her request for virtual participation to Defendant Demos, a Court Disability Coordinator, who responded that Judge Fernandez denied the request. (FAC ¶ 127.) Among other things, in-person participation was required on October 18 because previous Zoom hearings in this case had been chaotic. (*Id.* ¶ 102.) At the October 18 hearing, Judge Fernandez struck Marissa's motion for substitution because she was absent. (*Id.* ¶ 105.) At subsequent hearings before Judge Fernandez, virtual participation was allowed. (*Id.* ¶ 143.) Nevertheless, Marissa continued corresponding with Demos and other Employee Defendants, in pursuit of accommodations for all future proceedings. (*Id.* ¶¶ 144–53.) She proceeded through the circuit court's internal appeals process and her request for accommodations was ultimately denied. (*Id.* ¶¶ 183–85.)

Another request for accommodations was made to Judge Yu. On February 4, 2025, Marissa filed a "Notice as to Her Health and TP Claims" before Judge Yu. (FAC ¶ 188.) In the notice, she informed Judge Yu that her physician had prescribed her a "mandatory 75 day medical leave from the proceedings." *(Id.* ¶ 188.) Judge Yu then held a hearing on February 7, 2025, at which he struck Marissa's third-party claims against Jane. (*Id.* ¶ 186); 2/7/2025 Order, Divorce Case ¶ 1. In response, Marissa filed a petition for substitution of Judge Yu for cause, alleging that his decision to hold the February 7 hearing exhibited bias and violated her rights under the ADA, among other things. Petition for Substitution of Judge for Cause at 4–5, Divorce Case (filed 2/11/2025). On February 14, 2025, he set various pleadings related to the Custody Judgment's enforcement for trial on May 1, 2025. (FAC ¶ 215.) According to the FAC, Judge Yu ordered Marissa to appear in-person at the trial. (*Id.*) However, the scheduling order itself stated that the "proceedings may be conducted in a hybrid manner and any party/witness who wishes to appear remotely may seek leave to do so." 2/14/2025 Order ¶ 1, Divorce Case. In any case, Marissa alleges that Judge Yu's decision to set an in-person trial in May constituted a "denigrat[ion] of [her] medical conditions." (FAC ¶ 215.) Marissa's petition for substitution of Judge Yu would eventually be denied. 9/18/2025 Order, Divorce Case. The FAC characterizes his decision to hold the February 7 hearing as an ADA abuse. (*See* FAC ¶ 186.)

Based on these events, Marissa asserts claims against almost every Defendant. In Count I of the FAC, she alleges that Judges Fernandez, Scannicchio, and Ahern each violated the First Amendment by "den[ying] her admission to" the October 18 proceeding before Judge Fernandez.[3] (*Id.* ¶ 247.) In Count III, Marissa alleges that all Defendants except Jane violated Title II of the ADA by "intentionally refus[ing] to accommodate Plaintiff's disabilities." (*Id.* ¶ 259.) In Count IV, she alleges that all Defendants except Jane violated the Rehabilitation Act of 1973 through their "inexplicable and cruel denial of Zoom access to Plaintiff." (*Id.* ¶ 263.) Finally, in Count VIII, Marissa alleges that Defendants' "intentional[] refus[al] to accommodate Plaintiff" constituted negligence. (*Id.* ¶ 281.) All of these claims are asserted against Defendants in their personal capacities. (*Id.* ¶¶ 25–36.)

In *Sykes v. Cook County Circuit Court Probate Division*, the Seventh Circuit considered a claim similar to those before this Court. There, the plaintiff filed a motion for reasonable accommodations before a judge in the Cook County Circuit Court, requesting permission to bring her service dog to court proceedings. *Sykes*, 837 F.3d at 739. The judge denied her motion, so she filed a federal lawsuit against the judge and court, alleging that the motion's denial constituted a violation of the ADA. *Id.* The Seventh Circuit concluded that *Rooker-Feldman* barred federal jurisdiction over the ADA claim because it was inextricably intertwined with the judge's order denying accommodations. *Id.* at 742–43. In reaching this conclusion, the court noted that the plaintiff had multiple "avenues to overturn [the judge's] order in state court," including by pursuing appellate review, mandamus, or supervision from Illinois appellate courts. *Id.* at 741. "Instead of pursuing these avenues, [the plaintiff] went to federal court." *Id.*

---

[3] Judge Scannichio is alleged to be involved in the accommodations denials because she is the presiding judge of the Domestic Relations Division, and one of the accommodations requests was directed to her office and staff. Meanwhile, Judge Ahern is alleged to have been involved with Judge Fernandez's decision to deny Marissa access to the October 18 proceeding. (FAC ¶ 61.)

This case is on all fours with *Sykes*. Like the plaintiff in *Sykes*, Marissa asks this Court to evaluate the propriety of the Judicial Defendants' decisions to require in-person attendance at certain hearings in the Divorce Case. (*See, e.g.*, FAC ¶ 112 (challenging Judge Fernandez's "no-Zoom order").) And taking her challenge a step further, she also suggests that orders entered at those hearings were invalid due to her absence. To grant Marissa the declaratory relief and damages she seeks, the Court would have to determine that Judge Fernandez's order requiring in-person participation at the October 18 hearing violated federal law. This relief would effectively set aside not only the scheduling order, but also the order striking Marissa's third-party claims at that hearing. Under the precedent in *Sykes*, claims arising out of the October 18 hearing are therefore "inextricably intertwined" with Judge Fernandez's orders associated with that hearing, and the Court cannot exercise jurisdiction over them.

Similarly, deciding Marissa's claims against Judge Yu would implicate his scheduling orders, the orders entered at the February 7 and 14 hearings, and the later order denying Marissa's motion to substitute Judge Yu on the basis of his alleged disregard for Marissa's disabilities. Thus, the disability-based claims related to the allegations involving Judge Yu are also barred by *Rooker-Feldman*. The Court would not be able to grant Marissa her requested relief without "set[ting] aside" the orders that effectuated the alleged denials of Marissa's federal rights. *Sykes*, 837 F.3d at 743; *see also Lynch v. Jud. Branch*, No. 3:15CV1379(AVC), 2018 WL 11506202, at *3 (D. Conn. June 1, 2018) (applying *Rooker-Feldman* to ADA claims that challenged state-court orders); *Langworthy v. Whatcom Cnty. Superior Ct.*, No. C20-1637-JCC, 2021 WL 1788391, at *3 (W.D. Wash. May 5, 2021) ("Under *Rooker-Feldman*, this Court cannot review the state courts' decisions about what accommodations the ADA requires. [The plaintiff] must appeal the state court decisions within the state court system."); *Mezzano v. Second Jud. Dist. Ct. of the State of Nevada*, No. 3:23-CV-00324-RJC-CSD, 2023 WL 4868441, at *9–10 (D. Nev. July 31, 2023) (applying *Rooker-Feldman* and collecting cases). At bottom, this conclusion is based on the basic rule that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999).

To be sure, Seventh Circuit's recent treatment of the *Rooker-Feldman* doctrine in *Gilbank v. Wood County Department of Human Services* urged courts not to rely on "the 'inextricably intertwined' language" of cases like *Sykes*. 111 F.4th 754, 761 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1167 (2025) (en banc). *Gilbank* clarified that *Rooker-Feldman* "does not preclude claims merely premised on challenges to a state court's decision;" rather, courts applying the doctrine must "focus on the relief sought." *Id.* at 793, 797. However, *Gilbank* did not clearly abrogate *Sykes*'s holding that a federal lawsuit challenging a state court's denial of ADA accommodations was barred by *Rooker-Feldman*. *See id.* at 772–74 (Hamilton, J. dissenting) (discussing *Gilbank*'s silence as to well-established precedents). If *Gilbank* in fact overruled *Sykes* and Marissa's disability-related claims are not barred by *Rooker-Feldman*, the Court would nevertheless apply *Younger* abstention to Marissa's disability-related claims. *Younger* applies to the disability claims for the same reasons it applies to Marissa's other claims. Issuing a declaratory judgment, ordering damages, or an injunction requiring certain courtroom protocols would work a substantial interference with the state court's ongoing contempt proceedings related to the Custody Judgment. *See Mezzano*, 2023 WL 4868441 at *8 (abstaining from adjudicating ADA claims related to state-court proceedings under *Younger*).

7

Finally, even if neither *Rooker-Feldman* nor *Younger* were a "perfect fit" for Marissa's claims, the Court would abstain from exercising jurisdiction over the disability-related claims based on "principles of equity, comity, and federalism." *Woodard*, 997 F.3d at 722. Pursuant to those principles, "a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Id.* at 721–22. In *Woodard*, the Seventh Circuit applied comity abstention to the plaintiffs' claim that ongoing child custody proceedings violated their First and Fourteenth Amendment rights. *Id.* at 717. The Seventh Circuit found that "the entire design of [the plaintiffs'] federal action" was "to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Id.* at 723. Given this "threaten[ed] interference with and disruption of local family law proceedings" the federal court was "all but compel[led] . . . to stand down." *Id.* Yet no jurisdictional doctrine—not *Rooker-Feldman*, *Younger*, or the Domestic Relations Exception— was a "perfect fit." *Id.* at 724. Thus, the Seventh Circuit found abstention necessary based on broader "principles of comity, equity, and federalism." *Id.*

Here, as in *Woodard*, Marissa brings federal civil rights claims to challenge the state court's active enforcement of a child-custody order. The "design" of her suit is to obtain an "offensive[]" tool to influence the Divorce Case's trajectory. *Id.* And the disability-related claims are particularly intrusive because they implicate not only numerous individual rulings in the Divorce Case, but also the state court's management of its operations. *See Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070–71 (7th Cir. 2018) (concluding that comity abstention was appropriate where the plaintiff sought relief that "directly affect[ed] the administration of the state courts and 'would run contrary to the basic principles of equity, comity, and federalism'"). Given the substantial "risk[] [of] a serious federalism infringement" presented by Marissa's disability-related claims, the Court must abstain on comity grounds "[u]nless and until the state courts have proven unwilling to address" those claims. *Woodard*, 997 F.3d at 723, 725 (quoting *Courthouse News Serv.*, 908 F.3d at 1071).

Marissa herself alleges that the state judges allowed remote participation in many proceedings of the Divorce Case, suggesting that the state court's doors are open to her accommodations claims. And, as discussed above, Marissa has many paths to review of the court's rulings in the Illinois court system. *See also Woodard*, 997 F.3d at 724 ("[T]he Illinois domestic relations court is fully capable of respecting and adjudicating claims regarding [constitutional rights]."); *Lopez v. Kubalanza*, No. 24 C 13340, 2025 WL 2306815, at *14 (N.D. Ill. Aug. 11, 2025) ("Illinois courts are willing to consider constitutional claims and ADA accommodations in child custody proceedings."). Thus, even if none of the other jurisdictional doctrines discussed above are a perfect fit for Marissa's claims, principles of comity would require abstention. *See Lopez*, 2025 WL 2306815, at *12–14 (N.D. Ill. Aug. 11, 2025) (applying comity abstention to First Amendment and ADA claims against judges and court employees who denied the plaintiff's requests for disability accommodations in child custody proceedings).

## III.    Conclusion

For the foregoing reasons, Marissa's claims in the FAC are dismissed without prejudice. *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576 (7th Cir. 2022) ("Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice."). Although the dismissal is without

8

prejudice, Marissa is advised that the Court's "jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004).

Dated:  March 25, 2026

_____

Andrea R. Wood
United States District Judge

9